CLEVELAND–AKRON–CANTON ADVERTISING COOPERATIVE, Appellee,

v.

PHYSICIAN'S WEIGHT LOSS CENTERS OF AMERICA, INC., et al., Appellants.

[Cite as Cleveland–Akron–Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am., Inc., 184 Ohio App.3d 805, 2009-Ohio-5699.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92718.

Decided Oct. 29, 2009.

_____

Mansour, Gavin, Gerlack & Manos Co., L.P.A., and John F. Burke III, for appellee, Cleveland–Akron–Canton Advertising Cooperative.

Michael J. Kaplan, for appellant Physician's Weight Loss Centers of America, Inc.

Stark & Knoll Co., L.P.A., and Brian J. Seitz, for defendants Ralph Fichtner, Christine Floerke, Amy Linn, and Sparkle Wilson.

FRANK D. CELEBREZZE, JR., Judge.

{¶ 1} Appellant, Physician's Weight Loss Centers of America, Inc. ("PWLC"), appeals the lower court's denial of its motion to dismiss or stay the lower court proceedings pending arbitration. After a thorough review of the record, and for the following reasons, we reverse.

{¶ 2} Pursuant to agreements with PWLC's franchisees, each franchisee in northeast Ohio is required to join an advertising cooperative formed for the purpose of satisfying the franchisees' advertising responsibilities set forth in the franchise agreement. The Cleveland–Akron–Canton Advertising Cooperative (the "co-op") was established pursuant to a cooperative agreement executed by the franchisees setting forth the rights and responsibilities of the parties. PWLC was not a signatory to the cooperative agreement.

{¶ 3} The co-op is managed by its members, and each franchisee/member has agreed to contribute an equal share for advertising purchases made by the co-op as set forth in the cooperative agreement. The franchise agreement specifies each franchisee's minimum weekly advertising expenditure, which affects the required media purchases made by the co-op. The franchise agreement also contains a forum-selection clause that purports to limit jurisdiction to Summit County, Ohio, state or federal courts, as well as an arbitration clause that requires arbitration for any dispute arising under the franchise agreement.

{¶ 4} After having difficulty collecting mandatory advertising contributions from some past and present franchisees, the co-op initiated suit in the Cuyahoga County common pleas court on June 30, 2008, against the delinquent franchisees and PWLC.

{¶ 5} In September 2008, the defendants filed various motions including, among others, a motion to dismiss or stay the proceedings pending arbitration.[1] On January 12, 2009, the trial court denied defendants' motion to stay or dismiss pending arbitration, and defendants have appealed the denial of that motion.[2]

{¶ 6} In the appeal before us here, PWLC claims:

{¶ 7} I. "The trial court erred in its decision denying defendants' motion to dismiss because an arbitration clause contained in a commercial contract is valid and binding under Ohio Revised Code Section 2711.01.

{¶ 8} II. "The trial court erred in its decision denying defendants' motion to transfer because a forum selection clause contained in a commercial contract is valid and enforceable." [3]

## Standard of Review

{¶ 9} We note at the outset that the parties differ as to what standard of review is appropriate. PWLC, citing an unconscionability analysis, which neither the trial judge nor the co-op made, demands a de novo standard of review, while the co-op states that the general standard of review for the applicability of an arbitration provision is abuse of discretion, citing *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. In the absence of raising unconscionability, which is the case here, whether an arbitration provision applies requires an interpretation of a contract. "Interpretation of a contract is a question of law; thus we will employ a de novo standard of review." *Berry v. Lupica,* Cuyahoga App. No. 90657, 2008-Ohio-5102, 2008 WL 4438444, at ¶ 7, citing *Cercone v. Merrill Lynch, Pierce, Fenner & Smith,* Cuyahoga App. No. 89561, 2008-Ohio-4229, 2008 WL 3870657, citing *Vanyo v. Clear Channel Worldwide,* 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482.

## Law and Analysis

{¶ 10} While PWLC argues at great length that the arbitration provision is not unconscionable, the actual issue in the case deals with which contract the co-op is trying to enforce against PWLC and the way these contracts interact. The cooperative agreement, which the co-op cites as the basis of its action, contains no

---

1. PWLC also filed a motion to transfer venue to Summit County, citing the franchise agreement forum-selection clause. This motion was also denied on January 12, 2009.

2. The franchisees' appeal is addressed in *Cleveland–Akron–Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.,* Cuyahoga App. No. 92794, 2009-Ohio-5837, 2009 WL 3681391.

3. This second assignment of error will not be addressed because this issue is not ripe for review. *Lyons v. Zaleski* (1996), 75 Ohio St.3d 623, 665 N.E.2d 212.

arbitration provision. The franchise agreements, which do contain arbitration provisions, are merely referenced in its suit, argues the co-op.

{¶ 11} No provision of the cooperative agreement would bind PWLC in the way the co-op wishes. All the rights and obligations the co-op wishes to assert against PWLC arise in the franchise agreement. The co-op alleges that the underlying document in the action against PWLC is the cooperative agreement, with the franchise agreement providing only background, but the cooperative agreement has no provision that would impose a duty on PWLC to collect fees owed to the co-op or to pay any delinquent franchisee's fees.

{¶ 12} The co-op is seeking an order declaring that PWLC "must take affirmative steps to collect co-op fees or be required to pay the co-op all delinquent fees." The only provisions that require the franchisees to pay money to PWLC reside in the franchise agreement. Section Seven of the franchise agreement deals with fees, and Section Eight deals with advertising and sets forth the requirements for each franchisee in terms of local and national advertising contributions. These two sections are cited in the co-op's complaint, but not in any section of the cooperative agreement. The only provision in the cooperative agreement that addresses PWLC is a general precatory statement at the beginning of the agreement, which expresses that "[PWLC] will assist and supervise the [co-op], and have the final authority to resolve disagreements between all the aforesaid named, and any other Franchisee or group member, who will be named to the 'Cooperative Group,'" and a miscellaneous section declaring that PWLC is not responsible for any accounts of the co-op. As to its claims against PWLC, the co-op refers to the franchise agreements some 30 times in its complaint, but refers to the cooperative agreement only a few times and generally not as the source of the contract provisions it wishes to enforce.

## Arbitration

{¶ 13} The state of Ohio favors arbitration, when available, to settle disputes between parties who have agreed to arbitrate such disputes. This preference is evidenced in Ohio's statutory arbitration provision, R.C. 2711 et seq., as well as in Ohio case law. See *Gerig v. Kahn*, 95 Ohio St.3d 478, 2002-Ohio-2581, 769 N.E.2d 381; *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, paragraph one of the syllabus. A valid arbitration provision in a contract should not be ignored unless it may be said with positive assurance that the clause in question is not susceptible to an interpretation that covers the subject matter of the underlying dispute. A strong presumption exists in favor of the validity of a written arbitration clause. *St. Vincent Charity Hosp. v. URS Consultants, Inc.* (1996), 111 Ohio App.3d 791, 793, 677 N.E.2d 381.

{¶ 14} The enforceability of contractual arbitration provisions is governed by the laws of contract interpretation. Generally, parties who have not agreed to arbitrate their disputes cannot be forced to forego judicial remedies. *Moore v. Houses on the Move, Inc.*, 177 Ohio App.3d 585, 2008-Ohio-3552, 895 N.E.2d 579, citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409. See also *Avila Group, Inc. v. Norma J. of California* (S.D.N.Y., 1977), 426 F.Supp. 537, 542; *Peters v. Columbus Steel Castings Co.*, Franklin App. No. 05AP–308, 2006-Ohio-382, 2006 WL 225274. Generally, "[i]t follows that only the claims that arise from the contract which contains the clause can be submitted to arbitration." *Halloran v. Bucchieri*, Cuyahoga App. No. 82745, 2003-Ohio-5658, 2003 WL 22413680, at ¶ 12, citing *McCourt Constr. Co. v. J.T.O., Inc.* (Sep. 20, 1996), Portage App. No. 96–P–0036, 1996 WL 586422. There are instances when equity demands that parties who have not agreed to arbitrate their disputes may be forced to do so when "ordinary principles of contract and agency" require. *McAllister Bros., Inc. v. A & S Transp. Co.* (C.A.2, 1980), 621 F.2d 519, 524.

### Estoppel and Third–Party Beneficiary

{¶ 15} These situations were elucidated in *Thomson–CSF, S.A. v. Am. Arbitration Assn.* (C.A.2, 1995), 64 F.3d 773, which states: "[W]e have recognized five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Id. at 776. Estoppel applies when a party who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate. Id. at 778. This doctrine "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V. v. Grina* (C.A.1, 2003), 344 F.3d 134, 145.

{¶ 16} The *Thomson–CSF* court's estoppel analysis turned on whether the nonsignatory derived a direct benefit from the contract containing the arbitration clause such that acceptance of the benefit would also require acceptance of a contractual obligation. See also *Javitch v. First Union Secs., Inc.* (C.A.6, 2003), 315 F.3d 619, 629. This court has agreed, stating that "a nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, at ¶ 13.

{¶ 17} The co-op wishes to enforce the franchise agreement, from which it has knowingly received the benefits for years, while simultaneously avoiding the arbitration provision contained therein. The co-op knowingly accepted the benefits conferred by the franchise agreements and must endure its burdens.

{¶ 18} Ohio courts have added to the *Thomson–CSF* categories by including a third-party beneficiary exception, stating that "nonsignatories can be 'bound to an arbitration agreement via the theories of incorporation by reference, assumption, agency, veil-piercing/alter ego, and third-party beneficiary.'" *Houses on the Move,* 177 Ohio App.3d 585, 2008-Ohio-3552, 895 N.E.2d 579, at ¶ 31, quoting *Peters v. Columbus Steel Castings Co.,* 2006-Ohio-382, 2006 WL 225274, at ¶ 13.

{¶ 19} In order for a third party to maintain an action for breach of contract, the nonsignatory must be an intended third-party beneficiary of the agreement. *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 104, 701 N.E.2d 383. The co-op argues that it is a third-party beneficiary to the franchise agreements in hopes of maintaining suit for breach of contract while avoiding the arbitration provision. The co-op is clearly a third-party beneficiary under the franchise agreements according to the "intent to benefit" test set forth in *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 521 N.E.2d 780. *Hill* requires that "there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract." Id. The co-op was created through the franchise agreements and designated as the mandatory receiver of advertising payments from franchisees, which would fulfill the franchisee's advertising responsibility owed to PWLC. The co-op also conferred a direct benefit on PWLC by establishing another entity to supervise advertising in a defined geographical area, relieving PWLC of this responsibility.

{¶ 20} "Ohio cases have held that a third party beneficiary may maintain an action based upon the contract which contains the promise for his benefit." *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 196, 63 O.O.2d 364, 299 N.E.2d 295. The nonsignatory is not bound by the contract; "however, by accepting the benefits of the contract, the third party beneficiary also assumes the attendant burdens." (Emphasis omitted.) *QualChoice, Inc. v. Bhd. Ins. Co.,* Fifth Dist. No. 06CA 00020, 2007-Ohio-226, 2007 WL 152618, ¶ 15, citing *Fawn v. Heritage Mut. Ins. Co.* (June 30, 1997), Franklin App. No. 96APE12–1678, 1997 WL 359322. Once the third-party beneficiary has accepted the benefit of the contract, it can receive no greater rights from the contract than those possessed by the signatories. *Ohio Sav. Bank v. H.L. Vokes Co.* (1989), 54 Ohio App.3d 68, 71, 560 N.E.2d 1328.

{¶ 21} By maintaining an action for breach of contract against PWLC for promises made in the franchise agreements, the co-op has bound itself to the terms therein. The co-op must submit this dispute to arbitration as outlined in the franchise agreements.

{¶ 22} The lower court erred when it denied PWLC's motion to stay its proceedings pending arbitration. That decision must be reversed.

{¶ 23} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

SWEENEY, J., concurs.

COONEY, A.J., concurs in judgment only.