[Cite as *Imagine Nation Books, Ltd. v. STG Ents., Inc.*, 195 Ohio App.3d 286, 2011-Ohio-4639.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96215**

## IMAGINE NATION BOOKS, LTD.,

APPELLANT,

v.

## STG ENTERPRISES, INC., ET AL.,

APPELLEES.

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-689361

**BEFORE:** Celebrezze, J., Blackmon, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 15, 2011

Goldman & Rosen, Ltd., and James R. Russell Jr.; and
Faruki Ireland & Cox, P.L.L., and D. Jeffrey Ireland, for appellant.

David M. Leneghan and K. Scott Carter, for appellees.


FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Plaintiff-appellant, Imagine Nation Books, Ltd. ("INB"), brings this appeal challenging the trial court's determination that defendants-appellees, STG Enterprises, Inc. ("STG") and Steven Traina, its only officer, did not breach the terms of an agreement between the parties because there was no valid, enforceable contract. INB now argues that there was a valid agreement or, in the alternative, that it is entitled to the return of an $8,000 signing bonus it had advanced to Traina. After a thorough review of the record and law, we affirm the decision of the trial court.

{¶ 2} Traina had been a representative of Books Are Fun ("BAF") for several years. BAF was a competitor of INB in the retail sale of books and other items to children at in-school events. In July 2008, Traina flew to INB's headquarters in Boulder, Colorado, to discuss becoming a representative for INB. While there, Traina signed one of two nondisclosure agreements on July 7, 2008.[1] INB's Vice President of Displays Division, Tony Gilio, discussed Traina's defection from BAF, and the two reached an understanding that Traina would become an INB sales representative starting August 20, 2008, in time for the new school year. Traina was supplied with a representative agreement with a three-page

---

[1] The other nondisclosure agreement was signed on June 18, 2008.

cover letter laying out some key terms of the representative agreement, including its own liquidated-damages provision if Traina did not begin work by August 20, 2008. Traina signed and returned both of these documents on July 16, 2008. Traina received a check from INB for $8,000 dated July 17, 2008, described as a signing bonus. The letter accompanying the check was dated June 17, 2008.

{¶ 3} However, Traina and INB were never able to agree on the counties to which Traina would have exclusive sales rights, and an INB representative never signed the agreement.[2] Evidence was adduced at trial that Traina had signed on as a representative for INB so that INB would not have a sales representative in his area, and he would be free of any competition for the beginning of the 2008-2009 school year as he continued to sell for BAF.

{¶ 4} In November 2008, INB arranged to buy all BAF's inventory and intellectual property, an arrangement that was consummated in an asset-purchase agreement. This essentially terminated Traina's relationship with either company. After the asset-purchase agreement was signed, Traina inquired about a position with INB, but INB demanded the return of the signing bonus.[3] After Traina refused, INB contracted with another representative for Cuyahoga and surrounding counties.

{¶ 5} INB filed suit against Traina and STG on April 6, 2009, asserting various claims, including a breach-of-contract claim in its second amended complaint, arguing for

---

[2] A provision of the agreement specifically made signature by both parties necessary for contract formation.

[3] INB indicated to Traina that it would settle for a return of $6,000.

liquidated damages under the representative agreement.[4]  A three-day trial began on August 10, 2010, in which INB argued that the representative agreement was a valid, binding contract that entitled it to damages under the liquidated-damages provision of the representative agreement and the separate liquidated-damages provision in the three-page document prefacing the representative agreement, which INB now terms the "letter agreement."  Traina argued that this letter agreement was simply a cover sheet to the representative agreement and that in any event, an injury excused him from performance in accordance with that document.  INB also argued for the return of the signing bonus because there was no meeting of the minds with regard to the representative agreement.  Traina countered that the signing bonus was consideration for his agreement not to disclose any of INB's plans or discussions with his then employer, BAF.  Importantly, no written agreement referenced this bonus.

{¶ 6}  The trial court found that no contract existed between INB and Traina and that the signing bonus was in consideration for signing a nondisclosure agreement, as evidenced by the letter accompanying the check.  This letter was dated June 17, 2008, contemporaneous with the execution of a nondisclosure agreement.  However, the check was dated July 16, 2008, which is contemporaneous with Traina's signature on the representative agreement.  INB argued that the letter had been misdated.  The trial court ruled in favor of Traina and STG on these claims.  INB then timely appealed, assigning two errors for our review.

---

[4] INB's second amended complaint asserted ten claims, including a claim for replevin, conversion, tortious interference with business relationships, breach of guaranty, unjust enrichment, deceptive trade practices, unfair competition, injunctive relief, and two claims for breach of contract. Breach of the representative agreement is the only one at issue here.

**Law and Analysis**

**I. Judgment Entry Disposing of all Claims**

{¶ 7}   Although not raised as an issue by the parties, the trial court's order of decision does not specifically address all claims raised in INB's complaints by name.  However, the unmentioned claims are resolved by the holding that INB did not prove damages and that Traina and STG did not breach various contracts.

{¶ 8}   "For a court order to be final and appealable, it must satisfy the requirements of R.C. 2505.02, and if the action involves multiple claims and the order does not enter a judgment on all the claims, the order must also satisfy Civ.R. 54(B) by including express language that 'there is no just reason for delay.'  *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 5-7.

{¶ 9}   "In the absence of express Civ.R. 54(B) language, an appellate court may not review an order disposing of fewer than all claims.  *Scruggs* at ¶ 6.  The trial court may revise the order until all claims are adjudicated.  Civ.R. 54(B).  A court may not bypass the requirement to include the express language of Civ.R. 54(B) simply by designating the order as final.  Under Civ.R. 54(B), 'any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties' does not terminate the action without a determination that there is no just reason for delay."  *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, ¶ 7-8.

{¶ 10} The trial court's order disposes of INB's trademark claims, but does not specifically address the tortious-interference claim. At trial, INB elicited testimony that Traina or a party under contract with STG entered schools giving school personnel the impression that they were BAF representatives after December 2008. This, INB argued, interfered with contracts that INB had with those schools. However, the trial court's order states that "[t]he evidence presented to the Court is unreliable hearsay. Debbie Boyle did not testify about the email supposedly proving that Mr. Elias and Mr. Traina were holding themselves out as BAF representatives."

{¶ 11} The trial court found that STG did not breach its contract with BAF, which also disposes of the breach-of-guaranty claim against Traina. Further, the holding that INB did not prove its damages renders the unjust-enrichment claims moot. Traina's counterclaim was also disposed of by summary judgment, which merged with the trial court's final order in this case. Therefore, this is a final, appealable order.

## II. Breach of Contract

{¶ 12} INB first asserts that "[t]he trial court erred by failing to consider whether there was an enforceable letter agreement that appellee[s] breached entitling [INB] to liquidated damages in the amount of $11,560."

{¶ 13} The interpretation of an unambiguous contract is generally reviewed de novo. *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 9. However, that is not the situation presented here. Reviewing conflicting evidence about whether a party established that it

should be excused from performance based on a contract provision is a question of fact, not of law. This question of fact requires that due deference be afforded to the trial court's determination. *Gutbrod v. Schuler*, Cuyahoga App. No. 94228, 2010-Ohio-3731, ¶ 17; *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 14} Traina claims that he was prevented from performing because of a physical injury. The existence of such an injury is not a question of contract, but one of evidence adduced at trial that includes a weighing of credibility best left to the trier of fact. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Therefore, we apply an abuse-of-discretion standard to this portion of INB's argument. To constitute an abuse of discretion, the ruling must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 15} The letter agreement that INB refers to is a three-page document prefacing the representative agreement that highlights some key terms in it, but also sets forth some independent provisions. The letter agreement states that Traina will ensure that he is contractually free to work as an INB representative prior to August 20, 2008, and that he will begin work on that date. Traina asked that a provision be added excusing performance if "the early termination [of the agreement] results from [Traina's] death, injury or incapacitation, acts of God, or other circumstances outside of the direct control of [Traina]."

{¶ 16} Traina presented medical records that he had previously submitted to INB demonstrating that a back injury prevented him from lifting heavy items, a necessary duty

under the INB contract. The trial court found that Traina did not breach the representative agreement, if it was enforceable, because it contained the same provision regarding injury. This conclusion applies equally to the letter agreement because it contains the same injury provision. Therefore, the trial court did not abuse its discretion in finding that Traina did not breach the agreement.

{¶ 17} Although the trial court did not include a separate section in its findings of fact and conclusions of law addressing the letter agreement, that is because INB, at trial, referred to both simply as the representative agreement. The term "letter agreement" arises only in INB's motion for reconsideration after the verdict.

{¶ 18} The trial court did not fail to consider the letter agreement as INB now argues. This agreement was lumped together with the representative agreement during INB's arguments, and even if it was not, Traina was excused from performance due to injury.[5] Therefore, INB was not entitled to $11,560 in liquidated damages.

### III. Signing Bonus

{¶ 19} Appellant asserts, "Alternatively, if the letter agreement was not binding, the trial court erred by not finding that there was a failure of return consideration[6] for appellant's payment of the $8,000 signing bonus and requiring appellee to repay it."

---

[5] INB takes issue with the propriety of the evidence that Traina submitted and the fact that no medical expert testified about his injuries. However, it is well established that pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court. *State v. Jacks* (1989), 63 Ohio App.3d 200, 207, 578 N.E.2d 512.

[6] "Failure of consideration exists when a promise has been made to support a contract, but that promise has not been performed." *Rhodes v. Rhodes Indus., Inc.* (1991), 71 Ohio App.3d 797, 807, 595 N.E.2d 441, citing *Franklin v. Lick* (Apr. 19, 1979), Cuyahoga App. No. 37770.

**{¶ 20}** INB again argues that a de novo standard of review should apply to this assigned error as a matter of contract interpretation. However, no written agreement refers to the signing bonus. This issue requires a weighing of conflicting evidence in the record and is one that the trier of fact is in the best position to undertake. Absent an abuse of discretion, that determination should not be disturbed on appeal. Also, INB's arguments in this assigned error attack the weight of the evidence rather than the interpretation of an unambiguous contract provision. Accordingly, every reasonable presumption of the trial court's judgments should be afforded deference. *Seasons Coal,* 10 Ohio St.3d at 80.

**{¶ 21}** The letter included with the check states that it is a signing bonus, but does not specify that it was for beginning employment with INB. It states:

**{¶ 22}** "Enclosed please find your signing bonus.

**{¶ 23}** "We all look forward to a long prosperous relationship together.

**{¶ 24}** "Please call me anytime with any questions, comments or concerns."

**{¶ 25}** INB now argues that the $8,000 constituted a signing bonus as "an inseverable part of the cost of business of obtaining a new employee's service." Jack P. Friedman, Dictionary of Business Terms (4th Ed.2007) 615. While this may be the understood term in common parlance, no contract language in the record evidences that the signing bonus was for engaging in employment rather than for signing a nondisclosure agreement.

**{¶ 26}** The trial court heard the testimony, examined the dates of the documents in question, and determined that the $8,000 was consideration for signing the nondisclosure

agreement, as Traina testified.[7] The letter accompanying the check was dated June 17, 2008, one day before a nondisclosure agreement was signed by Traina. The check was dated July 17, 2008, the day after Traina signed the representative agreement. The conflicting dates of the letter and the check and the various agreements created an ambiguity that the trial court resolved in Traina's favor. This decision is supported in the record. Therefore, this assignment of error is overruled.

Judgment affirmed.

BLACKMON, P.J., and JONES, J., concur.

---

[7] INB points out that Traina admitted that the letter accompanying the check should have been dated sometime in July, but Tony Gilio, the author of the letter, testified that it was correctly dated.