[Cite as *Katz v. Katz*, 2018-Ohio-3210.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Nancy D. Katz

Appellee

v.

Randolph S. Katz, et al.

Appellants

Court of Appeals No. L-17-1157

Trial Court No. CI0201602910

**DECISION AND JUDGMENT**

Decided: August 10, 2018

* * * * *

John J. McHugh, III, for appellee.

Marvin A. Robon and Zachary J. Murry, for appellants.

* * * * *

**MAYLE, P.J.**

{¶ 1} Defendants-appellants, Randolph S. Katz and Max Auto Real Estate LLC, appeal the June 23, 2017 judgment of the Lucas County Court of Common Pleas, denying both their motion to dismiss, or in the alternative, to compel arbitration, and their motion

to strike the jury demand of plaintiff-appellee, Nancy D. Katz. For the reasons that follow, we reverse, in part, and affirm, in part, the trial court judgment.

## I. Background

{¶ 2} Mollie K Ltd. ("Mollie K") is a limited liability company formed in 2006. Mollie K's original members were Fifth Third Bank as Trustee of the Mollie Katz Trust for the benefit of Arthur Katz under agreement dated September 25, 1972, and Fifth Third Bank as Trustee of the Mollie Katz Trust for the benefit of Calvin Katz under agreement dated September 25, 1972. Each owned a 50 percent interest in the company. On November 17, 2009, the bank transferred 50 percent of its interest to Randolph S. Katz ("Randolph") and Susan Katz Kaufman, equally. It transferred the other 50 percent interest equally to Helane Katz Becker, Marci Katz Unger, and Sheila Katz Rothstein.

{¶ 3} Mollie K's primary business purpose was the purchase, ownership, and sale of commercial real estate. Its business relationship with its members was governed by an operating agreement executed on April 19, 2006. Pursuant to that agreement, Randolph served as the company's manager.

{¶ 4} On February 8, 2013, Randolph divorced Nancy D. Katz ("Nancy"), to whom he had been married since January 23, 1983. As part of their division of assets, Randolph transferred to Nancy his 25 percent interest in Mollie K. The final judgment entry of divorce provided that Randolph would guarantee that for a period of ten years, Nancy would receive distributions from Mollie K "of no less than $100,000.00 per year, payable in monthly installments of $8,333.00." This guarantee was "limited to an

2.

amount not to exceed $1,000,000," however, it was agreed that if distributions exceeded $100,000 in any one year, the excess would belong solely to Nancy.

{¶ 5} The judgment entry also explained what would happen "in the event all or a portion of Mollie K or Mollie K's assets [were] sold" during the ten-year period. It provided several examples illustrating how Randolph's guarantee would be adjusted for any amounts that remained owing to Nancy:

> 1.  Year number 3, Mollie K is sold in its entirety for $8,000,000.00. Nancy's share would be $2,000,000.00. Randy's guarantee is over.
>
> 2.  Year number 3, one-half of Mollie K is sold for $4,000,000.00. Nancy's share is $1,000,000.00. Randy's guarantee is over.
>
> 3.  Year number 3, 1/3 of Mollie K is sold for $2,460,000.00. Nancy's share in $660,000.00. Randy's guarantee is as follows: since two years have gone by Nancy would have already collected $200,000.00. Subtract $200,000.00 from the $1,000,000.00 guarantee, which leaves $800,000.00 remaining on the guarantee. Then subtract from the $800,000, Nancy's share of the proceeds of the sale, $660,000. This leaves a remaining total guarantee of $140,000.00. This amount then should be divided out over the remaining 7 years. Thus the annual guarantee would be $20,000.00
>
> 4.  In regard to the calculations in paragraphs 1, 2 and 3 only $100,000 per year will be credited toward [Randy's]'s guarantee. If

3.

*[Nancy] receives over $100,000 in any given year the overage will not be credited toward [Randy]'s guarantee for the 10 year period. All proceeds from the sale of Mollie K or Mollie K's assets will be credited toward the million dollar guarantee.*

{¶ 6} Despite having transferred his 25 percent interest to Nancy, Randolph continued to serve as manager of Mollie K. Approximately three years into the ten-year period provided in the final judgment entry of divorce, Mollie K sold its real estate holdings to Max Auto Real Estate LLC ("Max Auto"). Max Auto is a limited liability company that Randolph formed on August 17, 2015. He serves as its manager.

{¶ 7} After selling Mollie K's assets to Max Auto, Randolph asked Mollie K members to vote whether to (1) dissolve the company and disburse its cash—an action that would require unanimous consent of its members—or (2) invest the company's cash and continue to disburse it monthly until its funds were depleted, at which time "the LLC [would] end, since it [would] no longer have assets."

{¶ 8} Nancy voted on February 5, 2016 to "disperse [sic] the funds and dissolve the LLC," with the caveat that she was "reserving [her] rights as a member[.]" By unanimous agreement, Mollie K was, in fact, dissolved, and its cash was disbursed. Nancy's share was $842,332.40, delivered to her on March 4, 2016. With the March 4, 2016 payment and the monthly disbursements made in 2013 to 2016, Nancy received distributions from Mollie K totaling $1,151,106. This was in excess of the $1,000,000 guaranteed by Randolph under the final judgment entry of divorce.

4.

**{¶ 9}** Nevertheless, on May 25, 2016, Nancy filed a complaint against Randolph and Max Auto in the Lucas County Court of Common Pleas, General Division, for breach of fiduciary duty and fraud, alleging that Randolph organized Max Auto to "defeat and diminish" her income and capital appreciation interests in Mollie K, fraudulently transferred parcels of real estate from Mollie K to Max Auto at less than fair market value without securing third-party appraisals, and intentionally excluded her from membership in Max Auto. She claimed that these transactions were self-interested and performed in breach of Randolph's fiduciary duty to her. She accused Randolph of intentional and fraudulent misrepresentation, bad faith, and malice, and asked that a constructive trust be imposed over the real estate parcels. Nancy sought damages in excess of $25,000, punitive damages, and attorney fees.

**{¶ 10}** Randolph and Max Auto moved to dismiss Nancy's complaint or, in the alternative, to stay proceedings and compel arbitration. They argued that Mollie K's operating agreement required that disputes arising under the agreement be arbitrated, not litigated. They claimed that Nancy was a member of the company and bound by the arbitration provision, notwithstanding the fact that she had never signed the operating agreement. They maintained that the duties that Nancy alleged were owed to her arose from Randolph's position as manager of Mollie K, therefore, the arbitration provision controlled. Randolph and Max Auto conceded that the claims against Max Auto may not be subject to the arbitration provision, but they insisted that those claims were ancillary to the claims against Randolph and did not defeat the arbitrability of the claim.

5.

**{¶ 11}** Nancy opposed Randolph and Max Auto's motion. She denied that she was a "member" of Mollie K, questioned whether Randolph had ever been a member of the company,[1] and emphasized that she never signed anything agreeing to arbitrate disputes. Nancy maintained that her rights arose under the final judgment entry of divorce—not from the Mollie K operating agreement—and she insisted that she never agreed to arbitrate her rights under the divorce decree.

**{¶ 12}** The trial court concluded that it did not have enough information to rule on Randolph and Max Auto's motion to dismiss, and, therefore, held the motion in abeyance. Specifically, it indicated that additional information was needed regarding the nature of Nancy's interest in Mollie K—whether she was an "active member" or whether she was "seeking to enforce a right gained through her divorce."

**{¶ 13}** Discovery proceeded. Nancy amended her complaint to add claims for breach of the "settlement agreement," violation of the final judgment entry of divorce, and misappropriation, and to include a jury demand. Randolph and Max Auto renewed their motion to dismiss and moved to strike Nancy's jury demand.

---

[1] Nancy's claim that Randolph was not a member of Mollie K is based on the fact that the original assignments executed by Fifth Third in favor of Randolph Katz, Susan Katz Kaufman, Helane Katz Becker, Marci Katz Ungar, and Sheila Katz Rothstein, refer to Mollie K Ltd. as "an Ohio limited partnership," and speak of transferring "partnership interests." Randolph's transfer of his interest in Mollie K was accomplished by a form entitled "Transfer of Partnership Interest." Regardless of how these forms were worded, the documents submitted by Randolph from the Ohio Secretary of State show that Mollie K Ltd. is a limited liability company. The forms signed by Fifth Third and the form signed by Randolph successfully accomplished the transfer of interest in Mollie K Ltd.

6.

{¶ 14} In their renewed motion to dismiss, Randolph and Max Auto argued that Nancy's claims were either subject to the arbitration provision of the operating agreement, or were subject to an enforcement action in the domestic relations division. They again insisted that Nancy was a member of Mollie K and that Randolph's underlying duties to her arose from his position as manager of Mollie K. They also argued that the domestic relations court had retained continuing jurisdiction to enforce its judgment, thus the general division lacked subject-matter jurisdiction. Nancy countered that her interest arose from the divorce decree and characterized herself as a transferee of Mollie K—not a member. She argued that the domestic relations court reserved continuing jurisdiction only as to the parties' qualified domestic relations order ("QDRO").

{¶ 15} Randolph and Max Auto also moved to strike Nancy's jury demand as untimely under Civ.R. 38(B). Nancy urged that even if her jury demand was untimely—which she denied—the trial court had discretion under Civ.R. 39(B) to permit a trial by jury.

{¶ 16} The trial court denied Randolph and Max Auto's motion to dismiss. It agreed with Nancy, first, that the domestic relations court retained continuing jurisdiction only with respect to the parties' QDRO—not to resolve claims relating to Randolph's wrongdoing or self-dealing after the divorce was finalized. It also held that Nancy's claims were not subject to arbitration because they "are outside the scope of the arbitration clause," "have nothing to do with a purported business relationship with

7.

Mollie K," and "could be maintained without any reference to the Operating Agreement." Rather, the court determined, the lawsuit "relates to the divorce settlement agreement and the purchase agreement Mr. Katz entered into with Max Auto."

{¶ 17} As to the motion to strike the jury demand, the court agreed with Nancy that under Civ.R. 39(B), it had discretion to allow a trial by jury despite her alleged failure to make a timely jury demand. The court found that the "parties [had] done extensive discovery" and neither party "would be prejudiced with nearly two months to prepare for trial." It commented that "a greater number of factfinders can more thoroughly explore the nuances of this case." Accordingly, it denied Randolph and Max Auto's request to strike Nancy's jury demand.

{¶ 18} Randolph and Max Auto appealed the trial court's denial of their motion to dismiss, motion to compel arbitration, and their motion to strike, and assign the following errors for our review:

**Assignment of Error No. 1.**

The Trial Court erred in denying Defendants-Appellants' Motion to Dismiss, or in the Alternative, Motion to Compel Arbitration and Stay All Proceedings Pending` Arbitration (the "Motion to Compel Arbitration") because the claims and allegations that Plaintiff-Appellee has asserted against Defendants-Appellants are covered by, and subject to, a valid and enforceable arbitration agreement.

8.

**Assignment of Error No. 2.**

The Trial Court erred in denying Plaintiff's [sic] Motion to Dismiss as, even if the arbitration agreement were found to be inapplicable, Plaintiff's claims are properly the subject of an enforcement action in the Lucas County Domestic Relations Court and the General Division of the Lucas County Court of Common Pleas lacked jurisdiction over the subject matter of Plaintiff's claims.

**Assignment of Error No. [3].**

The Trial Court abused its discretion and committed reversible error by refusing to strike the jury demand in Plaintiff-Appellee's Amended Complaint where the demand was plainly untimely and Plaintiff's amended pleading did not raise any new factual issues.

## II. Law and Analysis

{¶ 19} In their first assignment of error, Randolph and Max Auto argue that the trial court erred in denying their motion to compel arbitration. In their second assignment of error, they argue that the trial court erred in refusing to dismiss the action for lack of subject-matter jurisdiction. And in their third assignment of error, they claim that the trial court erred in denying the motion to strike Nancy's untimely jury demand.

## A. Arbitration

{¶ 20} Section 7.1 of the operating agreement of Mollie K Ltd. provides that "[a]ny controversy or claim arising out of or relating to this Agreement, or breach

thereof, shall be settled by arbitration * * *." In their first assignment of error, Randolph and Max Auto argue that the trial court erred when it held that Nancy's claims were not subject to arbitration under this provision of the operating agreement.

{¶ 21} "Ohio courts recognize four principles that guide arbitrability[.]" *Entire Energy & Renewables, LLC v. Duncan*, 2013-Ohio-4209, 999 N.E.2d 214, ¶ 17 (10th Dist.), citing *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 10-14, 842 N.E.2d 488. They are:

(1) that arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a contract contains an arbitration provision, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

{¶ 22} Resolution of Randolph and Max Auto's first assignment of error requires us to answer two questions: (1) Do Nancy's claims arise out of or relate to the operating

agreement, and (2) Did Nancy agree to be bound by the arbitration provision contained in that agreement?

### A. Nancy's claims arise out of or relate to the operating agreement.

{¶ 23} The standard of review of a trial court's decision denying a motion to compel arbitration depends on the issues raised. *Rorick's Inc. v. Corporex Dev. & Constr. Mgt., LLC*, 5th Dist. Stark No. 2017CA00075, 2017-Ohio-8694, ¶ 23. Where, as here, the issue is whether a controversy is arbitrable under an arbitration provision of a contract, that is a question of law to be reviewed de novo. *Id.*, citing *Simmons v. Extendicare Heath Services, Inc.*, 5th Dist. Delaware No. 15 CAE 12 0095, 2016-Ohio-4831 ¶ 13.

{¶ 24} In determining whether a cause of action falls within the scope of an arbitration agreement, many Ohio courts apply the test set forth in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). *See Academy of Medicine v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 30 (approving the use of the *Fazio* test). In *Fazio,* the court held that a proper method of analysis for determining whether an issue is within the scope of an arbitration agreement "is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio* at 395.

{¶ 25} The trial court held that Nancy's claims could be considered without reference to the operating agreement. It held that Nancy's claims "have nothing to do with a purported business relationship with Mollie K," and, therefore, fall outside the

scope of the arbitration provision. As to Nancy's claims for breach of fiduciary duty, misappropriation, and fraud, we disagree.

{¶ 26} First, we observe that Nancy claims that Randolph owed a fiduciary duty to her. "A fiduciary duty is generally defined as a duty, created by an individual's undertaking, to act primarily for the benefit of others in connection with the undertaking." *O'Loughlin v. Ottawa St. Condominium Assn.*, 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327, ¶ 32. To the extent that Randolph owed Nancy a fiduciary duty, that duty arose from his position as manager of Mollie K. He was designated manager of Mollie K in section 1.6 of the operating agreement. Section 5.1 further provides that the members "hereby as a matter of contract delegate all authority * * * to manage the affairs of the Company" to the designated manager. Reference to the operating agreement is, therefore, necessary.

{¶ 27} Second, the final judgment entry of divorce did not prohibit the sale of Mollie K's assets; in fact, the entry contemplated this possibility and illustrated how Randolph's million-dollar obligation to Nancy would be affected by any such sale. Thus, Randolph's conduct in arranging the sale of Mollie K's assets presents an issue not of his obligations under the judgment entry of divorce, but rather of his contractual authority under the Mollie K operating agreement to facilitate such a sale. In fact, Nancy's amended complaint makes clear that the sale of Mollie K's assets was effected by Randolph *as manager of Mollie K.* The starting point for determining the propriety of Randolph's conduct, therefore, is the operating agreement itself, which sets forth in

12.

Article 5 the "Specific Enumerated Authority of the Manager," and also describes which acts require member consent. Reference to the operating agreement is, again, required.

{¶ 28} Finally, Nancy alleges in her complaint that Randolph failed to account to her for her fair share of the value of the parcels sold by Mollie K and that he "confiscated and misappropriated" her capital appreciation interest. Articles 3 and 4 of the operating agreement address the capital structure and financial structure of the company, and specify the priority of distributions upon winding up of the company. Again, the operating agreement must be referenced in considering her claims.

{¶ 29} The Ohio Supreme Court has recognized that "[a]n arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.'" *Academy of Medicine*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 18, quoting *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.,* 58 F.3d 16, 20 (2d Cir.1995). The operating agreement here includes this broad language. We find that Nancy's claims for breach of fiduciary duty, misappropriation, and fraud require reference to the operating agreement and, therefore, arise out of or relate to that agreement.

## B. Nancy is bound by the arbitration provision contained in the agreement.

{¶ 30} Randolph and Max Auto claim that as a member of Mollie K, Nancy is bound by the arbitration provision contained in the operating agreement. Nancy denies that she is a member of the company. She insists that she never signed any agreement

13.

binding her to arbitration and cannot be compelled to forego the right to litigate her claims in court.

**{¶ 31}** It is generally true that "a party cannot be compelled to arbitrate any dispute that he has not agreed to submit to arbitration." *Hussein v. Hafner & Shugarman Ents.*, 6th Dist. Wood No. WD-09-020, 2010-Ohio-4205, ¶ 34. There are circumstances, however, where a non-signatory to a contract may be bound to an arbitration provision in the agreement. *Javorsky v. Javorsky*, 2017-Ohio-285, 81 N.E.3d 971, ¶ 11 (8th Dist.). "[W]hether or not an arbitration provision applies to a nonsignatory involves a question of law." *JJ Connor Co. v. Reginella Constr. Co.*, 7th Dist. Mahoning Nos. 13 MA 75, 13 MA 77, 2014-Ohio-3873, ¶ 11.

**{¶ 32}** The judgment entry of divorce required Randolph "to take all necessary steps to transfer [to Nancy] ownership of [his] twenty-five percent" interest in Mollie K. Mollie K's operating agreement draws a distinction between (1) merely transferring or assigning a "Membership Interest" to a "Transferee," and (2) making the "Transferee" a "Member." A "Non-Member Transferee" has no rights under the operating agreement except as to the allocation and distribution of profits, losses "and other such items." A "Member," on the other hand, has greater rights. The agreement provides a mechanism for admitting a "Transferee" as a "Member":

> The Member who transferred the Membership Interest may make the Transferee a Member, and make the transferred interest a Membership Interest, without further action on the part of the Member, only after the

unanimous consent of the Members, which consent may be withheld for any or no reason. Such consent must be in writing, and the Transferee must execute a joinder agreement. In such event, the Transferee will become a Member and shall be recorded on the books and records of the Company.

{¶ 33} Randolph executed a Transfer of Partnership Interest on February 11, 2013, transferring his 25 percent interest in the company and confirming that he would have "no remaining ownership interest." The same day, the other four members of the company signed consents to Randolph's "transfer of interest" to Nancy, and to her "admittance * * * as a substitute Member in place of Randolph S. Katz." Significantly, it is not necessary to obtain the consent of the company's members for a mere transfer of interest to a non-member.

{¶ 34} Nancy claims that she did not execute a joinder agreement, therefore, she did not become a "Member" of Mollie K. But it is well-settled that parties may waive any term of a written contract by their words or conduct.[2] *St Paul's Lutheran Church v. Brooks*, 6th Dist. Huron No. H-07-022, 2008-Ohio-2481, ¶ 25. Here, it is clear and unequivocal that Mollie K's members *intended* to make Nancy a member as evidenced by the consent forms they executed (consenting to the admittance of Nancy—the

---

[2] In addition, we note that the operating agreement does not contain a no-oral-modification clause or a provision that expressly requires written waivers of contractual terms. To the contrary, section 7.5 of the agreement provides that "[f]ailure to enforce any term or condition or the specific waiver of any term or condition of this Agreement shall not be deemed a waiver of that term or condition *in the future* or of any other term or condition." (Emphasis added).

15.

transferee—"as a substitute Member in place of Randolph S. Katz"); Nancy *considered* herself a member as evidenced by the fact that she referred to herself as a member ("I am not waiving any of my rights as a member of Mollie K"); and Nancy was *treated* as a member as evidenced by the fact that she was permitted—and exercised—voting rights. We are not persuaded that the failure to execute the joinder agreement prevented her admission as a member of Mollie K or excused her from being bound by the company's operating agreement and its arbitration provision.

{¶ 35} Moreover, as Randolph and Max Auto point out, R.C. 1705.18(B) provides that "[a] substitute member of a limited liability company or an assignee of a membership interest in a limited liability company is bound by the operating agreement whether or not the substitute member or assignee executes the operating agreement." Thus, under R.C. 1705.18(B), Nancy is bound by the operating agreement, including its arbitration provision, whether she is a "substitute member" or mere "assignee of a membership interest."

{¶ 36} Finally, Ohio courts recognize a number of theories pursuant to which a non-signatory may be bound by an arbitration agreement. Under the theory of estoppel, for instance, "a party who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." (Citations and quotations omitted.) *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 15 (8th Dist.). "This doctrine 'precludes a party from enjoying rights and benefits under a contract while at the

16.

same time avoiding its burdens and obligations.'" *Id.,* quoting *InterGen N.V. v. Grina,* 344 F.3d 134, 145 (1st Cir.2003). Here, Nancy unquestionably benefitted from the operating agreement insofar as she received distributions from Mollie K and exercised voting rights. She is therefore estopped from avoiding application of its arbitration provision.

### C. Arbitrable and Non-Arbitrable Claims

{¶ 37} In addition to her claims for breach of fiduciary duty, misappropriation, and fraud, Nancy's complaint also alleges breach of the parties' "settlement agreement" and violation of the final judgment entry of divorce. It also asserts claims against Max Auto, an entity not bound by Mollie K's operating agreement. While we have concluded that Nancy's claims against Randolph for breach of fiduciary duty, misappropriation, and fraud are subject to arbitration, the same cannot be said for (1) her claims for breach of the parties' "settlement agreement" and violation of the final judgment entry of divorce, and (2) her claims against Max Auto.

{¶ 38} "Where an action involves both arbitrable and non-arbitrable claims, the entire proceeding must be stayed until the issues subject to arbitration are resolved." *Garber v. Buckeye Chrysler-Jeep-Dodge of Shelby, L.L.C.*, 5th Dist. Richland No. 2007-CA-0121, 2008-Ohio-3533, ¶ 18. Accordingly, the action on Nancy's non-arbitrable claims must be stayed pending resolution of her arbitrable claims.

{¶ 39} In sum, we find Randolph and Max Auto's first assignment of error well-taken, in part, and not well-taken, in part. We find that the claims against Randolph for

17.

breach of fiduciary duty, misappropriation, and fraud must be submitted to arbitration as set forth in Mollie K's operating agreement. And we find that the remainder of the claims against Randolph and the claims against Max Auto must be stayed pending resolution of the arbitrable claims.

## B. Jurisdiction of the Court of Common Pleas, General Division

{¶ 40} In their second assignment of error, Randolph and Max Auto argue that the trial court erred in denying their motion to dismiss for lack of subject-matter jurisdiction. Nancy argues that the court's order was not final and appealable. We agree. *See Vizzo v. Morris*, 5th Dist. Fairfield No. 2011-CA-52, 2012-Ohio-2141, ¶ 42 (holding that trial court's decision denying motion to dismiss for lack of subject-matter jurisdiction was not a final appealable order). We, therefore, find that Randolph and Max Auto's second assignment of error is premature and not final and appealable for purposes of this appeal.

## C. Jury Demand

{¶ 41} In their third assignment of error, Randolph and Max Auto argue that the trial court erred in denying their motion to strike Nancy's jury demand. Nancy argues that the trial court's decision cannot presently be reviewed because it is not a final appealable order. We agree. *See Hayes v. Goodson TSI, Inc.*, 2d Dist. Miami No. 89 CA 34, 1990 Ohio App. LEXIS 1546, *10-11 (Apr. 19, 1990) ("[T]he order of the trial court denying Appellant's motion to strike or limit Appellee's demand for a jury trial is not a final appealable order and * * * this court lacks jurisdiction to hear the cause."); *Frashuer v. Travelers Indemn. Co.*, 49 Ohio App.2d 1, 2, 358 N.E.2d 886 (9th Dist.1974) (holding

18.

that order striking jury demand was not a final appealable order); *Krichbaum v. Moder*, 1980 Ohio App. LEXIS 13892, *1, 1980 WL 354171 (dismissing appeal of order striking jury demand as not final and appealable). Similarly, we find that Randolph and Max Auto's third assignment of error is premature and not final and appealable for purposes of this appeal.

### III.  Conclusion

**{¶ 42}** We conclude that Nancy's claims against Randolph for breach of fiduciary duty, misappropriation, and fraud arise out of Mollie K's operating agreement, and Nancy is bound by the arbitration provision contained in the agreement. We, therefore, find Randolph and Max Auto's first assignment of error well-taken to the extent that they seek to compel arbitration of those claims. With respect to the remaining claims against Randolph and the claims against Max Auto, we find that these claims are not arbitrable, however, the action in the common pleas court with respect to these claims must be stayed pending arbitration.

**{¶ 43}** We deny Randolph and Max Auto's second and third assignments of error as premature and not final and appealable.

**{¶ 44}** Accordingly, we reverse, in part, and affirm, in part, the June 23, 2017 judgment of the Lucas County Court of Common Pleas. The costs of this appeal are assessed to Nancy Katz under App.R. 24.

Judgment reversed, in part,
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                    JUDGE
James D. Jensen, J.

                                        _____
Christine E. Mayle, P.J.                              JUDGE
CONCUR.

                                        _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.