[Cite as *Hackenburg v. Zeller*, 2015-Ohio-3813.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

CANDACE HACKENBURG,
EXECUTRIX, ET AL.,

    PLAINTIFFS-APPELLANTS,               CASE NO.  8-15-02

    v.

WILLIAM ZELLER,                       O P I N I O N

    DEFENDANT-APPELLEE.


Appeal from Logan County Common Pleas Court
Trial Court No. CV 14 06 0199

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   September 21, 2015


APPEARANCES:

    *Terrence G. Stolly and Melissa A. Marino*  for Appellants

    *Steven R. Fansler*  for Appellee

**ROGERS, P.J.**

{¶1} Plaintiffs-Appellants, Candace Hackenburg, in her personal capacity and as Executrix of the Estate of Deanna Zeller, f.k.a. Deanna Durnell ("Deanna"), David Durnell, and Michael Durnell ("the Appellants"), appeal the judgment of the Court of Common Pleas of Logan County denying their motion for summary judgment and granting the Defendant-Appellee's, William Zeller, motion for summary judgment. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

{¶2} This case stems from a matter originating in probate court after the death of Deanna. The following facts are undisputed. Before her death, Deanna owned and operated a campground located in Logan County comprised of several different tracks of land. On January 16, 2004, Deanna created Deanna's Properties LLC ("the Company") by filing articles of organization with the proper office. At that time, she also executed an operating agreement, which detailed, among other things, membership in the Company. Deanna was listed as the sole member of the Company at the time of filing.

{¶3} Deanna and Zeller were married two days later, on January 18, 2004. Up until the date of their marriage, they lived in separate residences. After they were married, Zeller moved into Deanna's residence, which was located on the campground. On January 21, 2004, Deanna and Zeller, as husband and wife,

transferred real property via quitclaim deed to the Company. The deeded premises consisted of the campground, common areas, a duplex, and the cabin which served as their marital residence (collectively, "the Premises"). The couple lived at the cabin until the spring of 2009, when the two moved to a house located at 1716 Whispering Pines, Bellefontaine, Ohio ("Whispering Pines"). This property was not included in the quitclaim deed. Zeller has continued to live at this residence even after Deanna's death on April 10, 2013.

{¶4} The operating agreement provided for how the Company would be affected by Deanna's death. Paragraph 1.9 of the operating agreement states,

> **Use of Assets upon Death of Deanna.** William M. Zeller, if married to Deanna at the time of her death, shall have the right to occupy the real estate identified in Exhibit 'A,' notwithstanding this Operating Agreement, for his natural life. He will also have the right to enjoy the income from the Company. This provision will either not apply or terminate as the case may be;
>
> **1.9.1** If prior to the death of Deanna there has been filed an initial pleading to commence an action for divorce, dissolution, annulment or for alimony only, and such proceeding was still pending;
>
> **1.9.2** If William ever cease to be married to Deanna for any reason other than the death of Deanna; or
>
> **1.9.3** If William should ever vacate the premises or should cohabit with, marry, or unite in any other union recognized by law with another person. Temporary absence such as extended vacation, or an illness in which return to the home likely will occur is not a vacation.

(Emphasis sic.) (Docket No. 1, Exhibit 1, p. 2). Additionally, membership rights were controlled by paragraph 2.2 of the agreement, which provided,

> **Contingent Members.** Upon the death of Deanna and so long as none of the provisions of Paragraph 1.9.1-1.9.3 occur, William Zeller, Michael Durnell, David Durnell and Candace Smith shall be Members holding for purposes of income Zeller 100 percent interest, and for purposes of voting Zeller 66 2/3 percent, and Michael, David and Candace 1/9 each. Upon an event named in Paragraph 1.9.1-1.9.3 the entire interests will go to Michael, David and Candace equally. All such interests are contingent upon the rest of this operating agreement.

(*Id.* at p. 3).

{¶5} On June 20, 2014, the Appellants filed a complaint for declaratory judgment in the Court of Common Pleas of Logan County against Zeller. In the complaint, the Appellants alleged that Zeller had no interest in the Company because he vacated the Premises as described in the Company's operating agreement. Zeller filed a motion to dismiss on July 23, 2014. On October 14, 2014, the Appellants filed an amended complaint for declaratory judgment. Zeller filed an answer to the amended complaint on November 17, 2014.

{¶6} On November 21, 2014, the Appellants filed a motion for summary judgment. Zeller filed a competing motion for summary judgment on December 15, 2014. On December 29, 2014, the Appellants filed a memorandum in opposition of Zeller's motion and in support of their motion. On January 7, 2015,

the trial court denied the Appellants' motion and granted Zeller's motion. The court explained,

> The central issue is what is this agreement as it relates to the ownership of the corporation. The Court finds that it is a unilateral document that was not signed or consented to by [Zeller.] While courts recognize a trust as a vehicle to put assets beyond the claims of a spouse, *Dumas v. Estate of Dumas*[,] 68 Ohio St.3d 405 (1994), this Court finds no authority to accord this operating agreement with the same status as a trust. The Court finds that the Plaintiffs' motion is not well taken. The Court finds that the Defendant's motion is well taken.

(Docket No. 40, p. 2).

{¶7} The Appellants filed this timely appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; THEREFORE, THE TRIAL COURT'S DECISION SHOULD BE REVERSED.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; THEREFORE, THE TRIAL COURT'S DECISION SHOULD BE REVERSED.**

### Assignment of Error No. I

{¶8} In their first assignment of error, the Appellants argue that the trial court erred by granting Zeller's motion for summary judgment. We agree.

**{¶9}** An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, *Inc.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

**{¶10}** The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the

moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. *Id.*; Civ.R. 56(E).

{¶11} Here, both motions for summary judgment involved the interpretation of a document, the operating agreement, and how it affects the membership of the Company. Interestingly, although the document has the words "**OPERATING AGREEMENT**" on the top of the document and otherwise provides all the information a traditional operating agreement would provide, the trial court did not find the document to be an operating agreement. Rather, the trial court determined that it was some sort of testamentary document that attempted to place assets beyond the claims of the spouse. The trial court failed to provide its reasoning for this determination, and this court cannot find any authority to support this conclusion.

{¶12} On the contrary, it is very clear from the face of the document that it is, in fact, an operating agreement. An operating agreement is defined as "all the valid written or oral agreements of the members or, in the case of a limited liability company ["LLC"] consisting of one member, a written declaration of that member, as to the affairs of a [LLC] and the conduct of its business." R.C.

1705.01(J). The document in question here was filed along with the articles of organization for the Company and squarely addressed Deanna's declarations as to the affairs of the Company and the conduct of its business. Therefore, we will treat it as such.

{¶13} Initial membership in a LLC is controlled by either the articles of organization or the operating agreement. *See* R.C. 1705.14(A). After the articles of organization are filed, a person can become a member of a LLC in one of two ways:

> 1. If he acquires an interest directly from the [LLC], upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the written consent of all of the members;
>
> 2. If he is an assignee of the interest of a member who has the power as provided in writing in the operating agreement to grant the assignee the right to become a member, upon the exercise of that power and compliance with any conditions limiting the grant or exercise of the power.

R.C. 1705.14(B)(1)-(2). Membership into a LLC can also be made conditional upon the happening of an event. *See Reif v. Wagenbrenner*, 10th Dist. Franklin No. 10AP-948, 2011-Ohio-3597, ¶ 27.

{¶14} "With regard to reviewing the language of [an] Operating Agreement and any addendums incorporated into the existing agreement, '[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties.' " *Great Invest. Properties, L.L.C. v. Bentley*, 3d

Dist. Marion No. 9-09-36, 2010-Ohio-981, ¶ 14, quoting *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361 (1997), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. Moreover, "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus, *superseded by statute on other grounds as stated in Bentley* at ¶ 14.

{¶15} In addition to the provisions of the operating agreement quoted supra, there are several other provisions that help determine Deanna's intent when she executed the operating agreement. In Recital B., it provides, "[Deanna] wishes to form a [LLC] * * * to accept a conveyance of [Deanna's] interest in the Property and other real property and to own, manage, improve, lease and sell such property." (Docket No. 1, Exhibit 1, p. 1). Next, in Recital C., "The purposes of the Company include * * * providing [Deanna's] spouse a residence and income upon [Deanna's] death during the marriage, and protecting the property against

claims of future creditors of family members, including claims of spouses in connection with marital dissolution proceedings." (*Id.*).

{¶16} After reviewing the operating agreement, we find that genuine issues of material fact exist as to whether Zeller's membership vested. There is at least one possible reading of the operating agreement that suggests Zeller's membership interest never vested. Paragraph 1.9.3 of the operating agreement provided:

> *If [Zeller] should ever vacate the premises* or should cohabit with, marry, or unite in any other union recognized by law with another person. Temporary absence such as extended vacation, or an illness in which return to the home likely will occur is not a vacation.

(Emphasis added.) Appellants argue that Zeller vacated the premises when he and Deanna moved to Whispering Pines. Thus, read alone, paragraph 1.9.3 would be satisfied and Zeller's interest would have never vested pursuant to paragraph 2.2.

{¶17} This, however, does not end the analysis. As with any written document, we must read the contract in a way that is consistent with the intent of the drafter. *Bentley*, 2010-Ohio-981 at ¶ 14. Although the language in paragraph 1.9.3 suggests that Zeller's membership interest would not have vested after the move to Whispering Pines, there is other language in the contract that suggests this interpretation could be inconsistent with Deanna's intent. For example, paragraphs 1.9.1 and 1.9.2 both contemplate situations where Deanna and Zeller were either divorced or were in the process of getting divorced on the date of Deanna's death. Further, one of the purposes of the Company was to provide not

only a house for Zeller upon Deanna's death, but also a source of income for Zeller. Also, reading paragraph 1.9.3 as a whole, instead of focusing solely on the vacate language, could lead a fact finder to conclude that Deanna's intent was for Zeller's interest to not vest only in the event of a separation. These are but a few examples that lead to a conclusion that a seemingly mutual marital decision to move to a different residence was not the type of event that was intended to trigger the provision in paragraph 1.9.3.

{¶18} That being the case, this is still not sufficient to warrant summary judgment in favor of Zeller. Since we are reviewing Zeller's grant of summary judgment in this assignment, all doubts must be resolved in favor of the Appellants, as the nonmoving party. *Adams v. Gables at Green Pastures Nursing Home*, 3d Dist. Van Wert No. 14-06-33, 2006-Ohio-6856, ¶ 12, citing *Murphy*, 65 Ohio St.3d at 358-359. It is also quite possible that Deanna's intent in drafting the operating agreement was primarily to provide Zeller a place to live upon her death since he moved out of his home and moved into her house on the premises. The act of purchasing and moving into Whispering Pines would, therefore, negate the need for future housing since Zeller would inherit Whispering Pines upon Deanna's death. Thus, we are not convinced one way or the other as to Deanna's intent. Therefore, a genuine issue of material fact exists, and Zeller was not entitled to judgment as a matter of law.

{¶19} Accordingly, the Appellants' first assignment of error is sustained.

*Assignment of Error No. II*

{¶20} In their second assignment of error, the Appellants argue that the trial court erred by denying their motion for summary judgment. Specifically, the Appellants argue that they were entitled to judgment as a matter of law because Zeller vacated the premises and, therefore, his membership interest never vested. We disagree.

{¶21} As stated supra, a genuine issue of material fact exists as to what Deanna's intent was in drafting the operating agreement. The same exists in regard to the Appellants' motion for summary judgment given that any doubt must be viewed in favor of Zeller. Therefore, they were not entitled to judgment as a matter of law, and the trial court did not err by denying their motion albeit for the wrong reasons.

{¶22} Accordingly, the Appellants' second assignment of error is overruled.

{¶23} Having found error prejudicial to the Appellants in the one of the particulars assigned and argued, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**SHAW and WILLAMOWSKI, J.J., concur.**