[Cite as *N. Hill Holdings, L.L.C. v. Concheck*, 2019-Ohio-5119.]

COURT OF APPEALS OF OHIO

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| NORTH HILL HOLDINGS, L.L.C., | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 108168 |
| v. | : | |
| JOSEPH E. CONCHECK, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT**: AFFIRMED
**RELEASED AND JOURNALIZED**: December 12, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-14-825474

*Appearances:*

Calabrese & Associates, L.L.C., and Maria L. Calabrese, *for appellant.*

Benesch, Friedlander, Coplan and Aronoff, L.L.P., Yelena Boxer, Trevor G. Covey, and Anthony Charles Sallah, *for appellees.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} North Hill Holdings, L.L.C. ("North Hill" or "appellant") appeals from a judgment of the trial court that granted a motion for summary judgment filed by Joseph E. Concheck and Buckeye Hoya, L.L.C. (collectively as "appellee"). Buckeye

Hoya, L.L.C. ("Buckeye") was a limited liability company, and Concheck was its managing member. The matter involved certain fees earned by Buckeye. North Hill claimed it was a member of Buckeye and Buckeye failed to distribute to North Hill its share of the fees. The trial court found that North Hill was not a member of Buckeye pursuant to R.C. 1705.14 and, therefore, North Hill lacked standing to bring the instant lawsuit. On appeal, appellant North Hill raises two assignments of error for our review:

> I. The trial court erred in its December 31, 2018 Judgment Entry by granting the Appellee's Motion for Summary Judgment. The trial court incorrectly ruled that Appellant North Hill Holdings, L.L.C. was not a member of Buckeye Hoya, L.L.C. since its inception.

> II. The trial court erred in its December 31, 2018 Judgment Entry by granting the Appellee's Motion for Summary Judgment. As an alternative to Assignment of Error No. 1, the trial court incorrectly ruled that the Appellees never consented to Appellant North Hill Holdings, L.L.C. becoming a member of Buckeye Hoya, L.L.C. after its inception.

After a review of the record and applicable law, we find no merit to the appeal and affirm the trial court's judgment.

**Formation of Buckeye**

{¶ 2} Buckeye was a limited liability company in the "transactional advisory business." Concheck and Anthony O. Calabrese, III, ("Anthony Calabrese") worked together to generate business opportunities for Buckeye. The company was formed on September 7, 2010. Anthony Calabrese prepared and filed its articles of organization with the Ohio Secretary of State. The company's articles of organization was signed by Concheck alone and no other signatures appear in the

document. While there is no indication whether Concheck signed the articles of organization as a member, manager or other representative, it is undisputed by the parties that Concheck was a 50 percent managing member of Buckeye. Buckeye had no operating agreement governing the company and its members. North Hill, solely owned by Anthony's wife, Maria Calabrese, claimed it was the other 50 percent member of Buckeye since its inception. Appellee disputed it.

**Buckeye Income from the BGL Transaction**

{¶ 3} The case specifically concerns the fees Buckeye earned from a 2012 transaction involving Brown Gibbons Lang ("BGL"), an investment banking firm, and National Entertainment Network ("NEN"), which was looking for refinancing capital. As alleged in the complaint, Anthony Calabrese introduced Concheck to two principals in the investment banking firm and the introduction enabled Concheck to obtain a consulting agreement in late 2010 with the investment banking firm. Under the consulting agreement, the investment banking firm would pay Buckeye 20 percent of fees earned from business opportunities brought by Buckeye. The agreement specifically concerned a recapitalization transaction involving NEN. Allegedly, NEN's recapitalization transaction was completed in November 2012 and Buckeye earned a fee of $231,000 for the transaction.[1]

---

[1] An exhibit submitted by appellee in its motion for summary judgment reflects an email communication from a representative of the investment banking firm BGL notifying Concheck that the contract between BGL and Buckeye relating to NEN was void because Buckeye was not registered as a broker and BGL could not pay Buckeye for the NEN transaction. The fee was allegedly paid by NEN instead.

{¶ 4} Appellant North Hill filed the instant lawsuit in April 2014, claiming it was the other 50 percent member of Buckeye.[2] It sought what it claimed to be its share of the $231,000 fees earned by Buckeye in the NEN transaction. North Hill sought the recovery of the money under three causes of action. It asserted Concheck (1) violated a fiduciary duty as the managing company member of Buckeye owed to North Hill, and (2) failed to maintain and provide records to members of the company, and (3) was unjustly enriched.

{¶ 5} Appellee moved for summary judgment, claiming that appellant North Hill lacked standing to bring the suit because it was not a member of Buckeye. Appellee alleged that Anthony Calabrese, not North Hill, was the other 50 percent member of Buckeye and, therefore, North Hill did not have standing to bring the instant complaint.

**Appellee's Exhibits**

{¶ 6} To support its claim that North Hill was not a member of Buckeye, appellee's motion for summary judgment attached several documents. The exhibits included Buckeye's articles of organization, which was signed by Concheck alone and identified no other members, and (2) two agreements dated September 1, 2010, and November 1, 2010, respectively, between Buckeye and other entities, in which

---

[2] By the time the lawsuit was filed, Anthony Calabrese was serving a nine-year prison term for RICO and other offenses in a federal case; he was ordered to pay over $130,000 in restitution and was subsequently permanently disbarred for his misconduct. *Disciplinary Counsel v. Calabrese*, 143 Ohio St.3d 229, 2015-Ohio-2073, 36 N.E.3d 151.

Anthony Calabrese signed as a member of Buckeye.[3]   While the exhibits did not include Concheck's deposition testimony, the exhibits included the deposition testimony by Maria Calabrese (the sole owner of North Hill), which reflected that she was somewhat uncertain as to who the other 50 percent member of Buckeye was when asked about it.[4]

**Appellant's Exhibits**

{¶ 7} Appellant North Hill opposed appellee's motion for summary judgment, claiming North Hill was a member of Buckeye since Buckeye's inception. Appellant submitted various exhibits to support its claim.  The exhibits included a 2011 tax year Schedule K-1 ("Partner's Share of Income, Deductions, Credits") issued by Buckeye to Maria Calabrese, which listed a 2011 distribution of $14,000 to her as a 50 percent individual partner of Buckeye.  Another exhibit showed a check from Buckeye for $14,000 dated January 18, 2011, payable to "Maria L. Calabrese North Hill Holdings."  There was also an exhibit showing a check for

---

[3] These two documents were filed under seal as part of the trial court record, but they were missing from the file on appeal.  The trial court alluded to the September 1, 2010 agreement in its decision but not the November 1, 2010 agreement.  Appellant does not dispute the authenticity of these documents but points to Anthony Calabrese's deposition testimony that he made a mistake in signing these agreements as a member of Buckeye and that he should have signed as an "authorized representative of North Hill." Appellant characterizes them as "inconsequential errors."

[4] Maria Calabrese testified at her deposition as follows:
Q.     Okay.  You're not sure whether you're a member of North Hill Holdings and a member of Buckeye Hoya?
A.     I know I have 50 percent of Buckeye Hoya.  I believe it's North Hill. I don't believe it's me, personally.

$45,000 dated December 6, 2012, paid to "North Hill Holdings." Appellant in addition submitted tax years 2012 and 2013 K-1 issued by Buckeye, which listed North Hill Holdings, L.L.C. as a 50 percent partner.

**The Trial Court's Decision**

{¶ 8} Reviewing the evidence submitted by the parties, the trial court noted that the September 1, 2010 agreement between Buckeye and another entity, in which Anthony Calabrese signed as a member of Buckeye, was evidence that he was a member at that time; the January 18, 2011 check was evidence that Maria Calabrese was a member at that time; and the 2012 and 2013 K-1's were evidence that North Hill was a member that year. The trial court also cited Anthony Calabrese's deposition testimony that North Hill was a 50 percent member of Buckeye and Maria Calabrese's deposition testimony that she "believed" North Hill was a 50 percent member of Buckeye. The trial court determined, however, that there was no documentary or testimonial evidence showing *when* or how North Hill became a member of Buckeye in accordance with R.C. 1705.14.

{¶ 9} Construing the evidence most strongly in favor of North Hill, the trial court found that Concheck and Anthony Calabrese were each a 50 percent member of Buckeye at the time of Buckeye's formation, and that there was no evidence that North Hill later became a member of Buckeye in accordance with R.C. 1705.14. Accordingly, the trial court concluded that North Hill did not have standing to bring the instant complaint regarding the fees earned in the NEN transaction.

**Appeal**

{¶ 10} We address the two assignments of error together. A trial court's granting of summary judgment is reviewed de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate where: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 11} Civ.R. 56(C) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

**Analysis**

{¶ 12} In this case, the trial court granted summary judgment in favor of appellee on the ground that North Hill was not a member of Buckeye and therefore lacked standing to bring the breach of fiduciary duties and related claims against Buckeye and its managing member. Accordingly, we limit our review to the narrow question of whether North Hill was a member of Buckeye at its inception or

subsequently became its member, as the resolution of that question disposes of this appeal.

{¶ 13} "'It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue.'" *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15, quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469, 715 N.E.2d 1062 (1999). Standing is defined as a party's ""'right to make a legal claim or seek judicial enforcement of a duty or right."'" *Id.,* quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting *Black's Law Dictionary* 1442 (8th Ed.2004).

{¶ 14} Turning to the instant case, limited liability companies are governed by R.C. Chapter 1705 ("Limited liability companies"). Unless the limited liability company has an operating agreement that provides otherwise, R.C. Chapter 1705 sets forth who is a member in a limited liability company and the rights and responsibilities of the members. Pursuant to R.C. 1705.081,

> an operating agreement governs relations among members and between members, any managers, and the limited liability company. * * * To the extent the operating agreement does not otherwise provide, this chapter governs relations among the members and between the members, any managers, and the limited liability company.

{¶ 15} "Operating agreement" is defined in R.C. 1705.01(J) as "all of the valid written or oral agreements of the members * * * as to the affairs of a limited liability company and the conduct of its business." A limited liability company's operating agreement determines the actual membership in the limited liability company and

the rights and responsibilities of the limited liability company. *Matthews v. D'Amore*, 10th Dist. Franklin No. 05AP-1318, 2006-Ohio-5745, ¶ 36. Many of the provisions of R.C. Chapter 1705 are subject to or dependent upon related provisions in an operating agreement. *McConnell v. Hunt Sports Ents.*, 132 Ohio App.3d 657, 688-689, 725 N.E.2d 1193 (10th Dist.1999). Buckeye, however, has no operating agreement, and therefore, it is governed by Chapter 1705 of the Revised Code. *Germano v. Beaujean*, 2013-Ohio-3846, 997 N.E.2d 1238, ¶ 16 (6th Dist.) (absent an operating agreement, statutory provisions govern the relationship between the members and the operation of the company).

{¶ 16} Pursuant to R.C. 1705.01(G), a member is one "whose name appears on the records of the limited liability company as the owner of a membership interest in that company." R.C. 1705.14 ("When a person becomes member; admission of additional members") sets forth how one becomes a member of a limited liability company. It states:

(A)     A person becomes a member at the time that a limited liability company is formed or at any later time that is specified in the records of the company for becoming a member.

(B)     After the filing of the articles of organization of a limited liability company, a person may be admitted as an additional member in either of the following ways:

(1)     If he acquires an interest directly from the limited liability company, upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the written consent of all of the members;

(2)     If he is an assignee of the interest of a member who has the power as provided in writing in the operating agreement to grant the assignee the right to become a member, upon the exercise of that power and compliance

with any conditions limiting the grant or exercise of the power.

{¶ 17} Under the statute, the "[i]nitial membership in a[n] LLC is controlled by either the articles of organization or the operating agreement." *Hackenburg v. Zeller*, 3d Dist. Logan No. 8-15-02, 2015-Ohio-3813, ¶ 13, citing R.C. 1705.14(A). Here, the only available corporate record is the articles of organization. The articles of organization only reflects Concheck's signature; North Hill does not appear anywhere on the articles of organization as a member. Thus, there were no corporate records to show North Hill was a member at the time Buckeye was formed pursuant to R.C. 1705.14(A).

{¶ 18} Thus, the only mechanism for North Hill to become a member of Buckeye was by utilizing either of the two provisions of R.C. 1705.14(B). *Id.* Under R.C. 1705.14(B)(1), North Hill could become a member by "the written consent of all the members," yet no such written consent was in the evidence. North Hill argues that even if North Hill was not a member of Buckeye at its formation, it became a member through consent under R.C. 1705.14(B)(1), as manifested by the distribution checks and Schedule K-1's. The statute by its plain language requires a "written consent of all members." North Hill cites no case law authority for its claim that a distribution to a nonmember or a tax document such as a Schedule K-1 constitutes a written consent for purposes of R.C. 1705.14(B)(1).

{¶ 19} As for R.C. 1705.14(B)(2), North Hill could become a member by being assigned "the interest of a member who has the power as provided in writing in the operating agreement to grant the assignee the right to become a member." In

the absence of a written operating agreement, however, North Hill could not become a member by way of assignment pursuant to R.C. 1705.14(B)(2).

{¶ 20} In sum, without an operating agreement, appellant North Hill must establish it became a member by written consent of existing member(s), yet no such evidence exists in the record. *See B.T. Environmental Solutions, L.L.C. v. B.T. Energy Group, Inc.*, 7th Dist. Columbiana No. 17 CO 0010, 2018-Ohio-5113, ¶ 17 (plaintiffs were not members of the limited liability company because they did not appear on the limited liability company's records as members, the limited liability company had no written operating agreement, and its existing members did not grant them membership).

{¶ 21} The record is devoid of evidence showing North Hill was a member of Buckeye at the time Buckeye was formed or subsequently became a member under R.C. 1705.14. The 2012 and 2013 tax documents identifying North Hill as a member of Buckeye and the deposition testimony by Anthony and Maria Calabrese failed to create a genuine issue of material fact regarding the question of whether North Hill was a member of Buckeye pursuant to the requirements and provisions of R.C. 1705.14. The first and second assignments of error are both without merit.

{¶ 22} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR