[Cite as *Zayicek v. JG3 Holdings, L.L.C.*, 2021-Ohio-1816.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

JOHN ZAYICEK,                                  :

    Plaintiff-Appellee,                 :

                               No. 109910

    v.                                          :

JG3 HOLDINGS, L.L.C., ET AL.,              :

    Defendants-Appellants.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 27, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-925214

---

### *Appearances:*

Lewis Brisbois Bisgaard & Smith, L.L.P., Gregory P. Amend, and Andrew J. Pullekins, *for appellee.*

Cohen Rosenthal & Kramer, L.L.P., James B. Rosenthal, and Joshua R. Cohen, *for appellants.*

MARY J. BOYLE, A.J.:

{¶ 1} Defendants-appellants, JG3 Holdings, L.L.C., et al. ("JG3"), bring this appeal challenging the trial court's judgment denying its motion to stay proceedings and compel arbitration in a breach of contract action filed by plaintiff-appellee John Zayicek. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Zayicek resides in the state of Georgia. JG3 is a Delaware limited liability company with its principal place of business in Cuyahoga County, Ohio. At the time that JG3's Operating Agreement was executed in February 2013, defendant-appellant Joshua Gottlieb was the sole owner and member of JG3. Gottlieb resides in Chagrin Falls, Ohio.

{¶ 3} The present appeal arose from a dispute between Zayicek and Gottlieb regarding a business and investment arrangement involving JG3. The present appeal requires this court to interpret the terms of three contracts. The first contract, JG3's Operating Agreement, was executed by Gottlieb on February 5, 2013. The Operating Agreement contains an arbitration provision and specifies that the application and interpretation of the Operating Agreement "shall be governed exclusively by its terms and by the laws of the State of Delaware, and specifically by the Delaware Act." The second contract is the January 27, 2016 Amendment to JG3's Operating Agreement. The Amendment, like the original Operating Agreement, was executed only by Gottlieb.

{¶ 4} The third contract is a Letter Agreement reached between Gottlieb and Zayicek. The Letter Agreement, dated January 27, 2016, was signed by Gottlieb and Zayicek on January 28, 2016. The Letter Agreement does not contain an arbitration provision. However, it contains a "Choice of Law" provision that provides that the agreement "shall be governed by and construed in accordance with the laws of the United States and otherwise with the laws of the State of Ohio[.]"

{¶ 5} Pursuant to the terms of the parties' Letter Agreement, Zayicek was obligated to contribute $1.8 million in cash or assets to JG3 in exchange for preferred membership interests in JG3 and guaranteed payments over a period of 20 years. Complaint at ¶ 10. Zayicek alleged that JG3 failed to make the requisite payments to him during the fourth quarter of 2018, and all four quarters of 2019. Zayicek alleged that the total of the payments JG3 failed to make was approximately $312,500. Complaint at ¶ 13-14.

{¶ 6} Pursuant to the terms of the agreement, Zayicek provided a notice of default on September 11, 2019, in which he notified JG3 of the breach and requested that the breach be cured. Zayicek also provided a "notice of representation and litigation hold" to JG3 on October 18, 2019.

{¶ 7} JG3 did not respond to either the notice of default or the notice of representation. As a result, on October 19, 2019, Zayicek delivered a notice of intention to file suit to JG3. Gottlieb responded to the notice of intention to file suit via email and a subsequent telephone conversation with Zayicek's attorney.

{¶ 8} On November 1, 2019, Zayicek requested information pertaining to JG3 from Gottlieb. The information and documentation requested by Zayicek included: (1) an accounting of JG3's assets, (2) an accounting of Zayicek's capital contributions to JG3, (3) JG3's monthly bank statements, (4) JG3's quarterly financial statements for 2019, and (5) JG3's tax returns for 2016, 2017, and 2018.

{¶ 9} On November 4, 2019, Gottlieb acknowledged receiving the request for documentation and information. Despite assuring Zayicek that the information and

documentation requested would be produced, Gottlieb did not produce any information or documentation.

{¶ 10} On November 15, 2019, Zayicek filed a complaint and a motion for prejudgment attachment against defendants JG3, Gottlieb, The Gottlieb Organization, L.L.C., Management Solutions, L.L.C., and John Does 1-10. Therein, Zayicek asserted causes of action for breach of contract, an accounting of all activities and assets of JG3, and declaratory judgment. Zayicek sought a declaration, pursuant to R.C. 2721.02 et seq., that the required minimum payments JG3 was required to make be accelerated, and the entire amount be due and owing by defendants to Zayicek.

{¶ 11} Zayicek amended his complaint on July 6, 2020. Zayicek's amended complaint asserted claims for breach of contract, an accounting, declaratory judgment, fraudulent inducement, fraudulent misrepresentation and concealment, actual fraudulent transfers pursuant to R.C. 1336.04, and constructive fraudulent transfers pursuant to R.C. 1336.05.

{¶ 12} On July 24, 2020, JG3 filed a motion to stay and compel arbitration, pursuant to R.C. 2711.02, and for leave to plead. Therein, JG3 argued that Zayicek's claims were subject to arbitration "according to the arbitration agreement between [Zayicek] and [JG3] as contained in [JG3's] Operating Agreement[.]" In support of its motion to stay and compel, JG3 submitted an affidavit of Gottlieb, JG3's Operating Agreement, and the Amendment to JG3's Operating Agreement.

{¶ 13} On July 31, 2020, Zayicek filed a brief in opposition to JG3's motion to stay and compel arbitration and for leave to plead. Therein, Zayicek argued that (1) Zayicek's claims pertain to the January 27, 2016 Letter Agreement, not JG3's February 5, 2013 Operating Agreement, (2) Zayicek was not a party to, and did not sign JG3's Operating Agreement, and (3) JG3 waived its right to stay proceedings and compel arbitration by actively participating in the litigation for eight months without raising the issue of arbitration. Zayicek submitted the January 27, 2016 Letter Agreement in support of his brief in opposition.

{¶ 14} On August 12, 2020, the trial court denied JG3's motion to stay and compel arbitration and for leave to plead. The trial court concluded that (1) Zayicek was not a signatory to the Operating Agreement, (2) the only signatory on the Operating Agreement and Amendment thereto was Gottlieb, (3) although the Operating Agreement contains an arbitration clause, the Letter Agreement does not, (4) the Letter Agreement is enforceable without relying on any rights or obligations created by the Operating Agreement, and (5) the rights Zayicek was seeking to enforce were created by the Letter Agreement, not the Operating Agreement.

{¶ 15} On August 24, 2020, JG3 filed the instant appeal challenging the trial court's August 12, 2020 judgment. JG3 assigns four errors for review:

> I. The trial court erred by denying [JG3's] motion to stay and compel arbitration.
>
> II. The trial court erred by finding that there was no agreement to arbitrate.
>
> III. The trial court erred by finding that there were no claims subject to the parties' arbitration agreement.

IV. The trial court erred by not staying the matter as to claims and parties that are not subject to mandatory arbitration.

## II. Law and Analysis

{¶ 16} JG3's assignments of error all challenge the trial court's judgment denying JG3's motion to stay proceedings and compel arbitration. Accordingly, JG3's assignments of error will be addressed together.

### A. Standard of Review

> When reviewing a challenge to an arbitration clause, the appropriate standard of review depends on "the type of questions raised challenging the applicability of the arbitration provision." *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Generally, an abuse of discretion standard applies. *Id.*, citing *Milling Away, L.L.C. v. UGP Properties, L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103. Whether a party has waived the right to arbitrate a dispute is subject to an abuse-of-discretion standard. *Id.* However, the issue of whether a party has agreed to submit an issue to arbitration or questions of unconscionability are reviewed under a de novo standard of review. *Id.* at ¶ 7-8, citing *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.), and *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12.

*Gertson v. Parma VTA, L.L.C.*, 8th Dist. Cuyahoga No. 108823, 2020-Ohio-3455, ¶ 11. In determining "whether a party has agreed to arbitrate, we apply ordinary principles of contract formation." *Avery v. Academy Invests., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 9, citing *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 18 (8th Dist.), and *Palumbo v. Select Mgt. Holdings, Inc.*, 8th Dist. Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18 ("The question whether the parties agreed to arbitrate their dispute is * * * a matter of contract. The terms of a contract are a question of fact.").

> Ohio recognizes a "strong public policy" in favor of arbitration and the enforcement of arbitration provisions. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *Taylor Bldg.* [at] ¶ 24; R.C. 2711.01(A). A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision and courts must resolve any doubts in favor of arbitrability. *See, e.g., Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998); *Taylor Bldg.* at ¶ 26; *see also Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 669, 687 N.E.2d 1352 (1998) (arbitration provision should not be denied effect "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'"), quoting *Independence Bank v. Erin Mechanical*, 49 Ohio App.3d 17, 18, 550 N.E.2d 198 (8th Dist.1988).

*Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 2018-Ohio-1748, 111 N.E.3d 763, ¶ 11 (8th Dist.). "Despite the presumption in favor of arbitration, *a party cannot be compelled to arbitrate a dispute the party has not agreed to submit to arbitration*." (Emphasis added.) *Id.* at ¶ 15, citing *Council of Smaller Ents.* at 665.

## B. The Contracts

### 1. JG3's Operating Agreement

{¶ 17} JG3's Operating Agreement, executed solely by Gottlieb on February 5, 2013, contains an Arbitration provision (Article 15, Section 16), that provides,

> Any dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in Charlotte, Delaware, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association (or at any time or at any other place or under any other form of arbitration mutually acceptable to the parties so involved). Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that

each party shall pay for and bear the cost of its own experts, evidence and counsel's fees, except that in the discretion of the arbitrator, any award may include the cost of a party's counsel if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic.

{¶ 18} The Operating Agreement also contains an "Application of Delaware Law" provision, Section 15.1, that provides, "[t]his Agreement and the application or interpretation hereof, shall be governed exclusively by its terms and by the laws of the State of Delaware, and specifically by the Delaware Act." Zayicek was not a party to, nor identified generally or as a member in the February 5, 2013 Operating Agreement.

## 2. The Letter Agreement

{¶ 19} The Letter Agreement provided the basis for an agreement between Gottlieb and Zayicek regarding Zayicek's "Investment and Retirement Income Program." Gottlieb signed the Letter Agreement as follows: "Joshua L. Gottlieb, individually and as agent for affiliated Gottlieb companies." JG3 was not specified as one of the affiliated Gottlieb companies. Furthermore, Zayicek signed the Letter Agreement in his individual capacity, not in his capacity as a purported member or preferred membership interest holder of JG3. The Letter Agreement was drafted on letterhead of "the Gottlieb Organization, LLC" not JG3. The Letter Agreement provides that Gottlieb formed JG3 for the purpose of entering into the arrangement described herein with Zayicek individually, who will also be a preferred member of JG3.

{¶ 20} Section 2 of the Letter Agreement, pertaining to Zayicek's contributions, provides:

> [Zayicek] will, directly or through whatever means he deems appropriate, contribute assets to JG3 with a reasonably-estimated value of $1,800,000 in cash and in kind.
>
> Gottlieb and [Zayicek] agree that [Zayicek] has rights, assets and expectancies in various Gottlieb-controlled entities with a deemed value of $650,000 (collectively, the "[Zayicek] Assets"). [Zayicek] shall contribute or cause to be contributed to JG3 all of the [Zayicek] Assets plus cash payments totaling $1,150,000 to JG3 for the purpose of fulfilling his agreed upon capital contributions to JG3. [Zayicek] shall be issued preferred membership interests in JG3 and shall be the sole member with such preferred membership interests, as described in more detail below.

{¶ 21} Section 4 of the Letter Agreement, governing JG3's capital structure, provides, in relevant part,

> [t]he rights and payments defined above [in the Letter Agreement] for the preferred membership interests in JG3 to be held by [Zayicek] are the sole rights and claims in and to the assets of JG3 by [Zayicek]. Upon the completion of the payments in full to [Zayicek] set forth in section 3b (if any) and in section 4a above, JG3 shall redeem [Zayicek's] interests in JG3 for $1.00 and Gottlieb and JG3 shall have no further payment obligations to [Zayicek] hereunder.

{¶ 22} The Letter Agreement contains an integration clause, or "Entire Agreement" provision, that provides

> This Agreement constitutes the entire agreement between the Parties relating to the subject matter hereof and supersedes all previous writings and understandings. No terms and provisions of this Agreement shall be varied or modified by any prior or subsequent statement, conduct or act of either of the Parties, except as the Parties may amend this Agreement by a writing signed by representatives of each party.

**{¶ 23}** The Letter Agreement contains a "Choice of Law" provision that provides,

> The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the United States and otherwise with *the laws of the State of Ohio* without reference to its conflicts of law principles. Any dispute, controversy, or difference which may arise between the parties out of or in connection with this Agreement, or for the breach thereof that cannot otherwise be resolved, shall be heard before *a court of competent jurisdiction* located in Cuyahoga County, Ohio.

(Emphasis added.)

**{¶ 24}** The Letter Agreement was dated January 27, 2016, and signed by Zayicek on January 28, 2016. The Letter Agreement does not reference or incorporate JG3's Operating Agreement or the January 27, 2016 Amendment thereto. There is no arbitration or dispute resolution provision in the Letter Agreement.

### 3. Amended Operating Agreement

**{¶ 25}** The Operating Agreement was amended on January 27, 2016. The Amendment provides,

> The Company is hereby authorized to issue, in addition to the existing issued and outstanding class of voting common membership interests ("Common Interests"), a preferred, non-voting class of membership interests ("Preferred Interests") upon terms and conditions established by the vote of the holders of a Majority Interest, which terms and conditions shall be set forth in writing and attached to the Member resolutions adopting same, from time to time.

**{¶ 26}** The January 27, 2016 amendment also changed JG3's principal place of business from 18 N. Main Street, Suite 200, Chagrin Falls, OH 44022, to 200 Public Square, Suite 3210, Cleveland, OH 44114. The Amendment to JG3's

Operating Agreement was executed on January 27, 2016, and signed by one member, Gottlieb. Zayicek was not a party to, nor identified generally, or as a member or preferred member in the January 27, 2016 Amendment.

{¶ 27} Because the Letter Agreement was executed by Zayicek on January 28, 2016, after the Amendment to the Operating Agreement was executed by Gottlieb on January 27, 2016, the Letter Agreement's integration clause, or "Entire Agreement" provision applies, pursuant to which the Letter Agreement superseded the Amendment to the Operating Agreement, which was a previous writing or understanding.

## C. Analysis

{¶ 28} In this appeal, JG3 argues that the trial court erred in denying its motion to stay and compel arbitration because (1) Zayicek is a member of JG3 and, as a result, is bound by the Operating Agreement, (2) Zayicek's claims cannot be maintained based solely on the Letter Agreement without reference to the relationship between the parties and the parties' rights set forth in the Operating Agreement, and (3) pursuant to the estoppel exception, Zayicek is bound by the Operating Agreement's arbitration provision although Zayicek did not sign the Operating Agreement or Amendment thereto.

### 1. Member

{¶ 29} First, JG3 argues that as a member or preferred member of JG3, "Zayicek is in all respects bound by the terms of the company's Operating Agreement, as amended." Appellant's brief at 7. Furthermore, JG3 contends that

as a member of JG3, Zayicek is bound by the Operating Agreement as a matter of law pursuant to Delaware's Limited Liability Company Act, which provides that "[a] member or manager of a limited liability company or an assignee of a limited liability company interest is bound by the limited liability company agreement whether or not the member or manager or assignee executes the limited liability company agreement." 6 Del. C. §18-101(9).

{¶ 30} The parties dispute whether Zayicek is a member of JG3. JG3 contends that Zayicek and defendant-appellant Joshua Gottlieb "are the sole members in [JG3] formed expressly to be the vehicle for the parties' investment program. Zayicek is the company's sole preferred member; Gottlieb is its sole manager." Appellant's brief at 3.

{¶ 31} Zayicek, on the other hand, contends that he was not admitted as a member of JG3. Although the Letter Agreement references JG3 and provides that Zayicek will be issued "preferred membership interests in JG3," Zayicek asserts that he was never granted said preferred membership interests.

{¶ 32} After reviewing the record, we disagree with Gottlieb and JG3, and find that Zayicek did not become a member of JG3 by executing the Letter Agreement.

{¶ 33} Section 1.22 of JG3's Operating Agreement defines a "member" as "[a]n Owner *who executes a counterpart of this Agreement* and holds all of the rights set forth in Article 5 hereof including all of the rights of an Economic Interest Owner as well as the right to vote on, consent to, or otherwise participate in certain

decisions of the Company."  (Emphasis added.)  "Owner" is defined by Section 1.27 of the Operating Agreement as "[a]n owner of a Membership Interest and/or Economic Interest."

{¶ 34} JG3 has failed to produce a counterpart of the Operating Agreement executed or signed by Zayicek.  The only "member" identified in JG3's Operating Agreement was Gottlieb.  JG3 appears to argue that Zayicek is a member of JG3, and thus bound by the Operating Agreement, despite the fact that Zayicek did not execute a counterpart to the Operating Agreement.

{¶ 35} To the extent that JG3 argues that Zayicek became a member of JG3 by executing the Letter Agreement, JG3's argument is misplaced.  "Counterpart" is defined as "one of two corresponding copies of a legal instrument."  Merriam-Webster Online Dictionary, https://www.merriamwebster.com/dictionary/counterpart (accessed Apr. 15, 2021); *see also Placid Oil Co. v. George*, 49 So.2d 500, 506 (La.App.1950), *rev'd on other grounds*, 1952, 221 La. 200, 59 So.2d 120, citing 10 Words & Phrases, Perm.Ed., page 43, verbo Counterpart, and *Black's Law Dictionary*, 452 (3d Ed.1933) verbo Counterpart ("It is our understanding that a counterpart must be considered as an exact copy of another instrument generally used for convenience in procuring signatures of several parties to the same agreement.").

{¶ 36} Because the Letter Agreement is not a counterpart of the original or amended Operating Agreement, Zayicek did not become a member of JG3 by executing the Letter Agreement.

## 2. Scope of Arbitration Provision

{¶ 37} Second, JG3 argues that the present dispute falls under the "broad" arbitration provision in JG3's Operating Agreement because Zayicek's claims (1) cannot be maintained based solely on the Letter Agreement, (2) "cannot be maintained without reference to the relationship between the parties as members of JG3," and (3) cannot be maintained without reference to the parties' rights set forth in the Operating Agreement. Appellant's brief at 12. JG3 contends that Zayicek's claims for breach of contract and "allegations of mismanagement of [JG3]" invoke and require referencing the Operating Agreement. In support of its arguments, JG3 directs this court to *Ohio Plumbing*, 2018-Ohio-1748, 111 N.E.3d 763.

> Despite the presumption in favor of arbitration, a party cannot be compelled to arbitrate a dispute the party has not agreed to submit to arbitration. *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998). In deciding whether a dispute falls within the scope of an arbitration agreement, "'[a] proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.'" *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 24, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003); *see also Park Bldg. Condominium Assn. v. Howells & Howells* [*Ents.*]*, L.L.C.*, 2017-Ohio-1561, 90 N.E.3d 131, ¶ 16 (8th Dist.).

*Ohio Plumbing* at ¶ 15.

{¶ 38} After reviewing the record, we find JG3's reliance on *Ohio Plumbing* to be misplaced.

{¶ 39} In *Ohio Plumbing*, plaintiff-appellee subcontractor Ohio Plumbing filed a complaint against defendant-appellant contractor Fiorilli for breach of

contract and violation of the Ohio Prompt Payment Act, R.C. 4113.61, based on Fiorilli's purported failure to pay Ohio Plumbing for work performed under the parties' contractual agreement. *Id.* at ¶ 4. The parties' contract for plumbing services contained an arbitration provision that applied to any "disputes under the [a]greement." *Id.* at ¶ 16. Fiorilli moved, in relevant part, to stay the action pending arbitration of Ohio Plumbing's claims. The trial court summarily denied Fiorilli's motion.

{¶ 40} On appeal, this court held that the trial court erred in denying Fiorilli's motion to stay proceedings pending arbitration. *Id.*, 2018-Ohio-1748, 111 N.E.3d 763, at ¶ 31. This court explained that Ohio Plumbing's claims could not be maintained without referencing the contract or relationship between Ohio Plumbing and Fiorilli. *Id.* at ¶ 16, citing *Alexander*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, at ¶ 24, and *Fazio*, 340 F.3d at 395. Furthermore, this court concluded that Ohio Plumbing's purported right to recover $5,337 arose out of the contractual agreement that contained an arbitration provision.

{¶ 41} In *Ohio Plumbing*, it was "undisputed that the parties' agreement contains a dispute resolution provision and that the dispute resolution provision includes an agreement to arbitrate, at Fiorilli's discretion, 'disputes under the Agreement.'" *Id.* at ¶ 14. Furthermore, the issue was whether the parties' dispute fell within the scope of the arbitration agreement.

{¶ 42} In the instant matter, it is undisputed that the Letter Agreement does not contain an arbitration provision, and the primary issue is the existence of an

enforceable agreement between Zayicek and JG3, not the scope of an arbitration agreement. The record reflects that Zayicek's claims for breach of contract, accounting, declaratory judgment, fraudulent inducement, fraudulent misrepresentation and concealment, and actual and constructive fraudulent transfers are based on the terms of the Letter Agreement that does not contain an arbitration provision.

{¶ 43} Unlike *Ohio Plumbing*, 2018-Ohio-1748, 111 N.E.3d 763, Zayicek's claims can be maintained based solely upon the Letter Agreement's terms and without reference to the Operating Agreement or Amendment thereto. The payments, accounting, and declaratory judgment to which Zayicek claims he is entitled arise from the Letter Agreement's terms, not the terms of the Operating Agreement. Zayicek's claims arise from the rights due to him and JG3's contractual obligations under the Letter Agreement. The Letter Agreement sets forth the terms for the cash payments Zayicek was entitled to receive over the course of 20 years. The Letter Agreement sets forth the accounting and reporting requirements Zayicek sought to enforce.

{¶ 44} The Letter Agreement provides that "[t]he rights and payments defined above for the preferred membership interests in JG3 to be held by [Zayicek] are *the sole rights and claims in and to the assets of JG3 by* [*Zayicek*]." (Emphasis added.) In other words, Zayicek's rights and claims in and to the assets of JG3 were limited to those specified in the Letter Agreement and did not include the rights afforded to JG3's members in the Operating Agreement. As noted above, JG3's

argument regarding Zayicek's status as a member of JG3 is misplaced and unsupported by the record.

{¶ 45} JG3 further argues that the Letter Agreement and Operating Agreement "cannot be construed as entirely independent contracts." Appellant's brief at 16. In support of its argument, JG3 directs this court to *Schneider v. Shafran*, 1st Dist. Hamilton No. C-120225, 2013-Ohio-380, asserting that *Schneider* is "nearly identical" to the present case.

{¶ 46} After reviewing the record, we find *Schneider* to be distinguishable from the instant matter. First, in *Schneider*, the parties entered into two agreements. The first agreement contained an arbitration provision, and the second agreement contained a forum-selection clause. Here, there is one agreement reached between JG3 and Zayicek — the Letter Agreement. The record reflects that JG3's Operating Agreement was not an "agreement" reached between Zayicek and Gottlieb or JG3.

{¶ 47} R.C. 1705.01(J) defines "operating agreement" as "all of the valid written or oral agreements *of the members* * * * as to the affairs of a limited liability company and the conduct of its business." (Emphasis added.) "A limited liability company's operating agreement determines the actual membership in the limited liability company and the rights and responsibilities of the limited liability company." *N. Hill Holdings, L.L.C. v. Concheck*, 8th Dist. Cuyahoga No. 108168, 2019-Ohio-5119, ¶ 15, citing *Matthews v. D'Amore*, 10th Dist. Franklin No. 05AP-1318, 2006-Ohio-5745, ¶ 36.

**{¶ 48}** As noted above, the Operating Agreement defined a "member" as a "[a]n Owner who executes a counterpart of this Agreement[.]" Zayicek did not execute the original Operating Agreement, the Amendment thereto, or a counterpart to either agreement. Nor was Zayicek referenced or identified in the agreements.

**{¶ 49}** Second, the subsequent agreement in *Schneider*, 1st Dist. Hamilton No. C-120225, 2013-Ohio-380, specifically referenced and sought to amend the first agreement containing the arbitration clause. Here, the Letter Agreement does not reference, incorporate, nor purport to amend JG3's Operating Agreement. The Letter Agreement's integration clause, or "Entire Agreement" provision, belies JG3's argument that the Letter Agreement and Operating Agreement are not independent contracts and must be construed together. Accordingly, JG3's reliance on *Schneider* is misplaced.

### 3. Estoppel

**{¶ 50}** Third, JG3 argues that the estoppel exception applies in this case under which Zayicek, a nonsignatory to the Operating Agreement or Amendment thereto, is bound by the arbitration provision in the Operating Agreement.

> This court has recognized several theories under which nonsignatories may be bound to the arbitration agreements of others. These theories, which arise from common law principles of contract and agency law, are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. [*I Sports v. IMG Worldwide, Inc.*, 8th Dist. Cuyahoga No. 83349, 2004-Ohio-3113, ¶ 12], citing [*Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773, 776 (2d Cir.1995)]; *Cleveland-Akron-Canton* [*Advertising*] *Coop. v. Physician's Weight Loss Ctrs. of Am.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 14-17 (8th Dist.).

The theories were explained in *I Sports* as follows: (1) a nonsignatory may compel arbitration against a party to an arbitration agreement under a theory of incorporation by reference where the party has entered into a separate contractual relationship with the nonsignatory that incorporates the existing arbitration clause; (2) a nonsignatory may be bound by an arbitration agreement if the nonsignatory's conduct indicates that it assumed the obligation to arbitrate; (3) traditional principles of agency law may bind a nonsignatory to an arbitration agreement; (4) veil piercing and alter ego theories may be used to bind a nonsignatory corporation to an arbitration agreement signed by another corporation; and (5) a nonsignatory to an arbitration agreement may be estopped from denying an obligation to arbitrate where the nonsignatory has knowingly accepted the benefits of an agreement that contains an arbitration clause. [*I Sports*] at ¶ 13-14.

*Miller v. Cardinal Care Mgt.*, 8th Dist. Cuyahoga No. 107730, 2019-Ohio-2826, ¶ 24-25.

{¶ 51} In support of its argument that the estoppel exception applies in this case, JG3 directs this court to *Katz v. Katz*, 6th Dist. Lucas No. L-17-1157, 2018-Ohio-3210, asserting that it is a "thoroughly analogous situation." Appellant's reply brief at 5. In *Katz*, there were two contractual agreements at issue: (1) a 2006 Operating Agreement of Mollie K Ltd., a limited liability company, that contained an arbitration provision, and (2) a 2013 final judgment entry of divorce between plaintiff-appellee and one of the defendants-appellants, under which the ex-husband transferred his 25 percent interest in Mollie K to plaintiff, and plaintiff was guaranteed to receive distributions from Mollie K for a period of ten years. *Id.* at ¶ 3-6.

{¶ 52} Plaintiff filed a complaint against her ex-husband and a limited liability company formed by the ex-husband after the divorce to which Mollie K sold

its real estate holdings. Plaintiff asserted claims for breach of fiduciary duty and fraud pertaining to her ex-husband's dealings in forming the limited liability company and transferring Mollie K's real estate holdings to the limited liability company following the parties' divorce. *Id.* at ¶ 9. Although plaintiff did not sign Mollie K's operating agreement, defendants-appellants moved, in relevant part, to stay proceedings and compel arbitration, arguing that plaintiff was a member of Mollie K and bound by the operating agreement. *Id.* at ¶ 10. Plaintiff opposed the motion to stay and compel arbitration, arguing that she was not a member of Mollie K, she never signed an arbitration agreement, and that the rights she was seeking to enforce arose from the final judgment entry of divorce rather than Mollie K's operating agreement. *Id.* at ¶ 11. The trial court denied the motion to stay and compel arbitration, concluding that plaintiff's claims "were not subject to arbitration because they 'are outside the scope of the arbitration clause,' 'have nothing to do with a purported business relationship with Mollie K,' and 'could be maintained without any reference to the Operating Agreement.'" *Id.* at ¶ 16. The trial court held that plaintiff's claims arose from the divorce settlement and the purchase agreement under which her ex-husband's limited liability company purchased Mollie K's real estate holdings, rather than Mollie K's operating agreement. *Id.*

{¶ 53} On appeal, the Sixth District reversed the trial court's judgment denying defendants-appellants' motion to stay and compel arbitration. The court held that (1) plaintiff's claims for breach of fiduciary duty, misappropriation, and fraud "require reference to the operating agreement and, therefore, arise out of or

relate to that agreement," and (2) under the theory of estoppel, plaintiff could not avoid application of the operating agreement's arbitration provision because plaintiff "unquestionably benefitted from the operating agreement insofar as she received distributions from Mollie K and exercised voting rights." *Id.* at ¶ 29, 36.

{¶ 54} After reviewing the record, we find *Katz*, 6th Dist. Lucas No. L-17-1157, 2018-Ohio-3210, to be distinguishable from the instant matter. Here, unlike *Katz*, Zayicek did not receive distributions or exercise other rights, such as voting, pursuant to JG3's Operating Agreement. Zayicek's rights to cash payments, accounting, and reporting arose from, and were governed by the Letter Agreement. Accordingly, while Zayicek unquestionably benefitted from the Letter Agreement, the same cannot be said about the Operating Agreement. Finally, as noted above, JG3's assertion that Zayicek, as a member of JG3, is bound by the Operating Agreement is unsupported by the record. Accordingly, JG3's reliance on *Katz* is misplaced.

{¶ 55} "Arbitration agreements apply to nonsignatories only in rare circumstances." *I Sports*, 8th Dist. Cuyahoga No. 83349, 2004-Ohio-3113, at ¶ 14, citing *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir.2002). Furthermore, the party moving for arbitration has the burden of establishing the existence of an enforceable arbitration agreement between it and the party against whom the moving party seeks enforcement. *Fifth Third Bank v. Senvisky*, 8th Dist. Cuyahoga Nos. 100030 and 100571, 2014-Ohio-1233, ¶ 11. In the instant matter, JG3 failed to demonstrate that it is entitled to enforce the arbitration agreement in JG3's

Operating Agreement against Zayicek, a nonsignatory to the agreement. *See Miller*, 8th Dist. Cuyahoga No. 107730, 2019-Ohio-2826, at ¶ 34.

{¶ 56} In the instant matter, Zayicek is seeking to enforce the Letter Agreement, not the Operating Agreement. Zayicek made payments in the amount of $1.15 million to JG3 pursuant to the terms of the Letter Agreement, not the Operating Agreement. The reporting obligations that Zayicek is alleging that Gottlieb or JG3 breached are set forth in the Letter Agreement, not the Operating Agreement.

{¶ 57} The payments Zayicek received from Gottlieb or JG3 in 2017 and 2018 (Quarters 1, 2, and 3), totaling $250,000, were made pursuant to the Letter Agreement, not the Operating Agreement. The payments that Zayicek alleged that he was entitled to, but did not receive (starting with the 2018 Quarter 4 payment and the payments thereafter) were based on the terms set forth in the Letter Agreement, not the Operating Agreement.

{¶ 58} For all of the foregoing reasons, the trial court did not err in denying JG3's motion to stay proceedings and compel arbitration. JG3's assignments of error are overruled.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
EILEEN T. GALLAGHER, J., CONCUR