[Cite as *Kennedy v. Stadtlander*, 2021-Ohio-4167.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PATRICK X. KENNEDY,                      :

    Plaintiff-Appellant,              :

                                 No. 110416

    v.                               :

GEORGE J. STADTLANDER, ET AL.,           :

    Defendants-Appellees.            :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:**  November 24, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931619

---

### *Appearances:*

Morganstern, MacAdams & DeVito Co., L.P.A., and
Christopher M. DeVito, *for appellant*.

Meyers, Roman, Friedberg & Lewis, and Peter Turner, *for
appellees* George J. Stadtlander and the Stadtlander
Family Trust.

TM Wilson Law Group, LLC, and Thomas M. Wilson, *for
appellee* Consoliplex Holding, LLC.

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, Patrick X. Kennedy ("Kennedy"), appeals the trial court's decision granting the motions to compel arbitration and to stay the case pending arbitration. Upon review, we reverse the trial court's decision and remand the case for further proceedings.

**Background**

{¶ 2} Consoliplex Holding, LLC ("Consoliplex"), is an Ohio limited liability company. Kennedy is a minority shareholder in Consoliplex and worked as a full-time employee of Consoliplex. George Stadtlander ("Stadtlander"), the sole manager and majority shareholder, assigned his interest in Consoliplex to The Stadtlander Family Trust ("the Trust") in 2019. The law firm of Meyers, Roman, Friedberg & Lewis, Alan Hirth, and Scott Lewis (collectively "Meyers Roman") are Consoliplex's corporate attorneys.

{¶ 3} The Operating Agreement of Consoliplex has an effective date of July 31, 2014.[1] Appendix B of the Operating Agreement defines "Agreement" as "this Agreement, as originally executed and as amended from time to time." The Operating Agreement contains titled sections addressing, among other topics, Members, Units and Percentage Interests; Distributions to Members; Transfers of Units; Withdrawal; and Dispute Resolution. Section 12 of the Operating Agreement covers dispute resolution and requires mediation of claims arising out of the

---

[1] The Stadtlander affidavit and the Kennedy affidavit both aver to an execution date of August 4, 2014.

Operating Agreement followed by arbitration of unresolved claims.  Section 12.2(a) provides as follows:

> Any Claim arising out of or related to this Agreement, within thirty (30) days after submission of the Claim to the Mediator (unless extended in writing by the parties), shall be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 12.1.

{¶ 4} After the Operating Agreement was executed, on October 1, 2014, Kennedy and Stadtlander entered a Stock Option Agreement ("SOA").  The Stock Option Agreement granted Kennedy certain options to purchase shares of common stock, representing up to a 50 percent share interest in Consoliplex.  Pursuant to the SOA, Stadtlander initially transferred 5 percent of the shares of Consoliplex to Kennedy and additional shares were offered to Kennedy on a scheduled basis.  Section 3 of the SOA sets forth a repurchase right upon termination of Kennedy's employment with Consoliplex and includes a "Put Option" that generally gave Kennedy the right to require the repurchase of his purchased shares "except where Employee's Employment is terminated for Cause."  There is no arbitration or dispute resolution provision in the SOA.  The SOA provides for legal remedies, specific performance, and equitable relief under the laws of Ohio:

> 9.(d)  Specific Performance.  In addition to any and all other remedies that may be available at law in the event of any breach of this Agreement, the parties hereto shall be entitled to specific performance of the agreements and obligations of the parties hereunder and to such other injunctive or other equitable relief as may be granted by a court of competent jurisdiction.

> 9.(e)  Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Ohio,

without reference to the choice of law or conflicts of law provisions thereof.

{¶ 5} The SOA precludes subsequent inconsistent agreements, but permits amendments and waivers of the agreement:

> 9.(c)  No Inconsistent Agreements. Neither Stadtlander or [sic] will not hereafter enter into any agreement with respect to its securities that is inconsistent with or violates any of the rights granted to the Employee in this Agreement.

> 9.(h)  Amendments, Waivers and Consents. Any term of this Agreement may be amended or terminated and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the parties hereto.

The SOA further provides that it is a complete agreement of the parties:

> 9.(g) Complete Agreement. This Agreement, together with its Exhibits, constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

{¶ 6} On December 8, 2016, Kennedy signed a "Joinder Agreement" in which he agreed "that the Units of Membership Interest of Consoliplex Holding, LLC * * * that the undersigned has acquired and may acquire in the future from George Stadtlander are subject to the terms and conditions of an Operating Agreement of [Consoliplex] dated as of July 31, 2014, as amended from time to time." Kennedy acknowledged in the Joinder Agreement that he had read the Operating Agreement, and he agreed "to be bound by the Operating Agreement."[2] The Joinder Agreement does not reference the SOA.

---

[2] We note that Kennedy should have been aware of the arbitration provision.

**{¶ 7}** On June 1, 2017, Kennedy and Stadtlander entered into the "First Amendment to Operating Agreement of Consoliplex Holding, LLC" ("First Amendment"). It is acknowledged in the First Amendment that Stadtlander and Kennedy had entered into the SOA, that Kennedy had a 20 percent interest in Consoliplex at the time of execution of the First Amendment, and that Kennedy's membership interest "is subject to all the terms, conditions and restrictions" in the SOA. Under the terms of the First Amendment, Kennedy specifically agreed "that by joining in the execution of this Amendment, he is joining as a party to the Operating Agreement as if an original signatory hereto" and that "any Units owned by him [now] or in the future shall be subject to the terms and conditions of the Operating Agreement."

**{¶ 8}** The First Amendment states that it was being entered for purposes of "(i) joining Kennedy as a party to the Operating Agreement, as same is being modified pursuant to this Amendment * * *," "(ii) restating those provisions in the Operating Agreement that obligate Remaining Members to purchase the Units of a deceased member, to maintain life insurance to facilitate such purpose * * *," and "(iii) to reconcile certain provisions in the Operating Agreement and Stock Option Agreement that are in conflict or are inconsistent with each other." The First Amendment amended and restated only two sections of the Operating Agreement, including Section 8.6 Disposition of Interest Upon Death or Disability of a Member, and Section 8.7 Life Insurance. The First Amendment specifically provides that "this Amendment shall be deemed an amendment to the Stock Option Agreement

(but solely for the purposes expressly stated herein)." The First Amendment does not reference the dispute resolution section or arbitration clause in the Operating Agreement.

{¶ 9} Kennedy's employment with Consoliplex was terminated on or about December 2, 2019. Following his termination, Kennedy sent Stadtlander a notice of exercise of repurchase right pursuant to the SOA. Kennedy did not seek the transfer or withdrawal of his shares, or to enforce any section of the Operating Agreement. Rather, Kennedy sought to enforce his Put Option under Section 3 of the SOA and other rights and obligations arising under the SOA. As stated by appellees, "[a]fter the termination of his employment on December 2, 2019, Kennedy sought to exercise a 'put' right to have his membership interest in Consoliplex purchased as provided for under the terms of the SOA entered into after the Operating Agreement became effective." Kennedy demanded that his membership interest in Consoliplex be purchased under the terms of the SOA, but the request was not honored. Thereafter, the parties participated in mediation, but the mediation was not successful.

{¶ 10} On April 1, 2020, Kennedy filed a complaint against Stadtlander, the Trust, Consoliplex, Alan Hirth, Scott Lewis, and Meyers Roman, Friedberg & Lewis, L.P.A. The complaint raises claims relating to the SOA and independent tort claims. The complaint includes causes of action for a declaratory judgment regarding Kennedy's membership interest in Consoliplex and rights, obligations, and duties under the SOA; breach of the SOA contract; breach of the implied duty of good faith

and fair dealing regarding the SOA; wrongful termination of minority member from Consoliplex; conversion of Kennedy's stock interests in Consoliplex; civil conspiracy between Stadtlander and Meyers Roman regarding Kennedy's interest in Consoliplex; legal malpractice; and tortious interference with the SOA contract. The complaint seeks monetary damages and the equitable remedy of a declaratory judgment regarding the SOA.[3]

{¶ 11} Stadtlander and the Trust filed a joint motion for an order compelling arbitration and staying the case pending arbitration. Consoliplex filed a motion to compel arbitration and staying the case. Meyers Roman filed a motion to stay pending arbitration; however, the parties agreed that the claims against the Meyers Roman defendants are not subject to arbitration. Each of the motions asserted that claims raised in the complaint are subject to the Operating Agreement's dispute resolution provision and arbitration clause.

{¶ 12} On March 12, 2021, the trial court issued a decision granting the motions to compel arbitration and staying the claims that are nonarbitrable under the parties' agreements. [4] The trial court found that "the claims do not arise out of the Operating Agreement, but rather out of the SOA, which was executed after the Operating Agreement." However, the trial court then determined that "the language of the First Amendment is clear and unambiguous: by executing the First

---

[3] We do not decide the merits of the claims herein.
[4] The trial court also ruled on other motions filed in the case that are not involved in this appeal.

Amendment, Kennedy is joining the Operating Agreement and his membership interest * * * is subject to its terms and conditions, including arbitration." The trial court found that application of the arbitration clause in the Operating Agreement to Kennedy's claims "is not inconsistent [with the SOA] and does not violate Kennedy's rights." The trial court concluded: "The court can find no meaning for Section 2 of the First Amendment other than the obvious one: Kennedy is required to submit any claims regarding his membership interests to arbitration." The court ordered several of the claims to be arbitrated and stayed the remaining claims pending arbitration. [5]

{¶ 13} Kennedy timely appealed the trial court's decision.

**Assignments of Error**

{¶ 14} Kennedy raises two assignments of error that provide as follows:

Assignment of Error No. 1: The trial court erred when it granted Appellees' Joint Motion for Order Compelling Arbitration and Staying Case.

Assignment of Error No. 2: The trial court committed error when it determined, under the circumstances presented herein, that an earlier signed Operating Agreement could be applied to the later executed Stock Option Agreement that did not include an arbitration clause, expressly provided for a civil action, and prohibited subsequent inconsistent agreements.

---

[5] We note that Kennedy has not challenged whether any of these individual claims, including the claim for declaratory judgment, are subject to arbitration. Rather, he maintains that none of the claims are subject to arbitration. We do not need to consider the individual nature of the claims herein.

**Law and Analysis**

{¶ 15} When reviewing whether a party has agreed to arbitrate an issue, which is a matter of contract, we employ a de novo standard of review. *Gibbs v. Firefighters Community Credit Union*, 8th Dist. Cuyahoga No. 109929, 2021-Ohio-2679, ¶ 13, citing *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9 (8th Dist.). However, the trial court's factual findings are to be accorded appropriate deference. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 2.

{¶ 16} Although Ohio courts recognize a strong public policy favoring arbitration, when deciding whether to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue and not the general policies of the arbitration statutes. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20, citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute that he or she has not agreed so to submit. *See id.* at ¶ 20, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998); *Maestle v. Best Buy Co.*, 8th Dist. Cuyahoga No. 79827, 2005-Ohio-4120, ¶ 10, 22.

{¶ 17} "In determining 'whether a party has agreed to arbitrate, we apply ordinary principles of contract formation.'" *Estate of Mary Battle-King v. Heartland of Twinsburg*, 8th Dist. Cuyahoga No. 110023, 2021-Ohio-2267, ¶ 15, quoting *Avery v. Academy Invests., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-

Ohio-3509, ¶ 9. The party moving to compel arbitration has the burden of establishing the existence of an enforceable arbitration agreement with the party against whom the moving party seeks enforcement. *Gibbs* at ¶ 15, citing *Dorgham v. Woods Cove III*, 8th Dist. Cuyahoga No. 106838, 2018-Ohio-4876, ¶ 16.

{¶ 18} In this action, after entering into the Operating Agreement of Consoliplex Holding, LLC, which was later amended by the First Amendment to Operating Agreement of Consoliplex Holding, LLC, the parties entered into the Stock Option Agreement. The SOA is a complete and independent contract that granted Kennedy certain options to purchase shares of common stock in Consoliplex. The SOA does not include a dispute resolution provision or arbitration clause and was never amended to include one. Appellees maintain that Kennedy's claims are subject to arbitration because he was bound by Consoliplex's Operating Agreement and agreed his membership interest was subject to the terms and conditions of the Operating Agreement, including arbitration. However, the relevant claims in the complaint relate solely to the SOA, not the Operating Agreement.

{¶ 19} "Thus, the question presented in this case is whether an arbitration clause in one agreement encompasses a dispute arising under another related agreement between the parties." *Locum Med. Group, L.L.C. v. VJC Med., L.L.C*, 8th

Dist. Cuyahoga No. 102512, 2015-Ohio-3037, ¶ 12. With regard to the dispute in this action, we answer that question in the negative.[6]

{¶ 20} In *Locum*, the parties executed two agreements: (1) a "Fee Sharing Agreement," under which the parties were to divide gross revenue received as a result of their joint efforts to place physicians with their client hospitals and medical practices, and (2) a "Client Agreement," under which Locum agreed to pay healthcare practitioner fees and expenses, and VJC agreed to reimburse Locum for these expenses. *Id.* at ¶ 4-5. The Fee Sharing Agreement included an arbitration provision, but the Client agreement did not. *Id.* at ¶ 4-5. The Client Agreement, which was signed after the Fee Sharing Agreement, stated it was a complete agreement between the parties and provided that any litigation arising out of, or in connection with, or relating to the Client Agreement "will be instituted in the appropriate court based on monetary jurisdiction in Cuyahoga County, Ohio." *Id.* at ¶ 5-6. Locum filed a complaint seeking to recover funds advanced to practitioners under the Client Agreement and attendant fee schedule. *Id.* at ¶ 8. Locum's claim did not involve fee sharing; it sought reimbursement of expenses. *Id.* at ¶ 16. Nevertheless, VJC filed a motion to stay proceedings and compel arbitration pursuant to the arbitration provision within the earlier executed Fee Sharing

---

[6] We recognize that Kennedy brought another action seeking a declaratory judgment that he is entitled to inspect and audit Consoliplex's books and records pursuant to the Operating Agreement. Because the claims in that action fell within the scope of the Operating Agreement's arbitration clause, this court determined the trial court erred in denying a joint motion to stay the case and compel arbitration. *Kennedy v. Stadtlander*, 8th Dist. Cuyahoga No. 109880, 2021-Ohio-1954, ¶ 21. Unlike that action, the claims set forth in the complaint in this action relate to the SOA, not the Operating Agreement.

Agreement. *Id.* at ¶ 8. The trial court denied the motion. *Id.* On appeal, this court found the trial court correctly overruled VJC's motion to stay and compel arbitration. *Id.* at ¶ 20. This court concluded that none of Locum's claims fell within the scope of the Fee Sharing Agreement and because the claims were governed by the Client Agreement, the dispute was to be resolved in a court of law. *Id.* at ¶ 16-20.

{¶ 21} In this action, the trial court found the claims raised by Kennedy "do not arise out of the Operating Agreement, but rather out of the SOA, which was executed after the Operating Agreement." The arbitration provision in the Operating Agreement covers "[a]ny Claim arising out of or related to this Agreement * * *." As argued by Kennedy, "[t]his case involves the terms and conditions (i.e. Put Option) in the SOA Contract and no reference to the separate Operating Agreement, the Joinder Agreement, or the First Amendment is required." The SOA states that it is a complete agreement between the parties, and it does not contain or incorporate any arbitration provision. Section 9(d) of the SOA provides for all "remedies that may be available at law in the event of any breach" of the SOA, including "injunctive or other equitable relief as may be granted by a court of competent jurisdiction." Similar to *Locum*, because the subject claims are governed by the SOA, the dispute is to be resolved in a court of law.

{¶ 22} Although appellees argue in this matter that Kennedy ignores Section 9(h) of the SOA, which permits amendment and waiver of any term of the SOA, this section is not implicated. Neither the Joinder Agreement nor the First Amendment modified or amended the SOA to include any dispute resolution provision or

arbitration clause with respect to rights and obligations established under the SOA. The Joinder Agreement relates to the Operating Agreement and does not mention the SOA. The First Amendment amended two sections of the Operating Agreement, Section 8.6 Disposition of Interest Upon Death or Disability of a Member and Section 8.7 Life Insurance. Appellees concede that "[t]he First Amendment does not modify the SOA."

{¶ 23} Additionally, the First Amendment acknowledges that "Kennedy's membership interest is subject to all the terms, conditions and restrictions contained in the Stock Option Agreement * * *." To the extent the First Amendment reconciled certain conflicts or inconsistencies between two limited provisions of the Operating Agreement and the SOA, the First Amendment expressly provides it "shall be deemed an amendment to [the SOA] (but solely for the purposes expressly stated herein)." The First Amendment did not reference the arbitration clause or expressly state that it will modify the SOA to include a dispute resolution provision or arbitration clause. Furthermore, Section 9(c) of the SOA precludes any subsequent agreements inconsistent with any of the rights granted to Kennedy under the SOA. Simply put, the First Amendment did nothing to change Kennedy's right to bring claims arising from the SOA in a court of law.

{¶ 24} Nevertheless, appellees argue the SOA must be read in pari materia with the Operating Agreement. Ordinarily, "only the claims that arise from the contract which contains the clause can be submitted to arbitration." *Halloran v. Bucchieri*, 8th Dist. Cuyahoga No. 82745, 2003-Ohio-5658, ¶ 12, citing *McCourt*

*Constr. Co. v. J.T.O., Inc.*, 11th Dist. Portage No. 96-P-0036, 1996 Ohio App. LEXIS 4114 (Sept. 20, 1996).

{¶ 25} In *Zayicek v. JG3 Holdings, L.L.C.*, 2021-Ohio-1816, 173 N.E.3d 794 (8th Dist.), this court upheld a trial court's decision to deny a motion to stay and compel arbitration in a breach of contract action. *Id.* at ¶ 1. [7] Though the facts are somewhat distinguishable from this matter, in *Zayicek* we concluded that the dispute was not subject to an arbitration provision within an "Operating Agreement," and that the claims arose from the rights and contractual obligations under a "Letter Agreement" that did not include an arbitration or dispute resolution provision. *Id.* at ¶ 43. "In other words, Zayicek's rights and claims in and to the assets of JG3 were limited to those specified in the Letter Agreement and did not include the rights afforded to JG3's members in the Operating Agreement." *Id.* at ¶ 44. We acknowledge that in *Zayicek*, Zayicek was not a signatory to the Operating Agreement or an Amendment thereto. *Id.* at ¶ 48. However, in rejecting an argument that the Letter Agreement and Operating Agreement could not be construed as entirely independent contracts, this court noted in part that "[t]he Letter Agreement does not reference, incorporate, nor purport to amend JG3's Operating Agreement. The Letter Agreement's integration clause, or 'Entire Agreement' provision, belies JG3's argument that the Letter Agreement and

---

[7] We note that the notice of supplemental authority filed by Kennedy has been stricken in part, particularly with regard to notice of *Zayicek* and the supplemental arguments presented. Our citation to *Zayicek* is from this court's independent research and familiarity with the decisions of our court.

Operating Agreement are not independent contracts and must be construed together." *Id.* at ¶ 49.[8]

{¶ 26} Here, although Kennedy agreed that his membership interest in Consoliplex was subject to the terms and conditions of the earlier executed Operating Agreement, the Operating Agreement's dispute resolution process and arbitration clause have no application to the claims raised in the complaint that relate solely to the SOA. We recognize that the trial court correctly concluded that the claims originated under the SOA; however, it then wrongly applied the arbitration clause in the Operating Agreement to the claims arising under the SOA. We certainly understand this was likely due to the complexity of the arguments presented and the multiple contracts between the parties. However, upon our de novo review, we are unable to conclude that the Operating Agreement subsumes the SOA.

{¶ 27} The SOA is a complete and independent agreement. It was never amended or modified to include an arbitration clause, and the rights and obligations Kennedy seeks to enforce are limited to those arising under the SOA. The parties never actually agreed to submit claims arising under the SOA to arbitration. Accordingly, we find no merit to appellees' assertion that the Operating Agreement's arbitration clause controls in this action.

---

[8] The court also recognized that the Letter Agreement was not a counterpart to the Operating Agreement. *See Zayicek* at ¶ 36.

{¶ 28} Appellees also argue that Kennedy issued a notice of demand for binding arbitration under Section 12.2 of the Operating Agreement prior to filing his complaint. We reject this argument insofar as it is being raised for the first time on appeal. We also recognize that Kennedy's notice is conditioned on the extent to which the "stand alone claims under the Ohio Revised Code, Ohio common law, and the separate 2014 Stock Option Agreement" may be judicially deemed appropriate for inclusion in the arbitration process, "as argued by [Stadtlander's] attorneys but objected to by [Kennedy's] counsel." Therefore, Kennedy did not agree to submit any claims alleged in the complaint to arbitration and cannot be compelled to submit to arbitration. We are not persuaded by any other of appellee's arguments.

{¶ 29} We sustain the assignments of error. Upon our review, we find the trial court erred by granting the motions to stay the case and to compel arbitration. Accordingly, we reverse the order compelling arbitration of certain claims and staying the remaining claims pending arbitration.

{¶ 30} Judgment reversed; case remanded.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
MARY EILEEN KILBANE, J., CONCUR